**STATE of Tennessee, Appellee,**

v.

**Robert Lee TAYLOR, Appellant.**

Court of Criminal Appeals of Tennessee,
at Jackson.

Dec. 29, 1983.

Permission to Appeal Denied by the
Supreme Court March 5, 1984.

John B. Bond, Brownsville, for appellant.

William M. Leech, Jr., Atty. Gen., Raymond S. Leathers, Asst. Atty. Gen., Nashville, Albert H. Schoonover, Clayburn L. Peeples, Asst. Dist. Attys. Gen., Trenton, for appellee.

OPINION

JAMES C. BEASLEY, Special Judge.

The defendant, Robert Lee Taylor, was charged with the first degree murder of

Joseph A. Howse. He was convicted of this offense by a Haywood County jury and sentenced to life in prison. On this appeal, he challenges the sufficiency of the convicting evidence and says the trial court should suppress the testimony of James Pickens, Jr., concerning a statement made to him by the defendant. He also complains that the testimony of James Ray Thompson, Jr., who was the victim in a later crime, served only to inflame and prejudice the jury and that incorrect answers given by two members of the jury caused irreparable harm and prejudiced the defendant's trial. We find no merit in the issues presented and affirm the judgment of conviction.

The evidence establishes that on the evening of February 2, 1981, James Robertson, who was employed by Jerry's Oil Company, went to the company's service station in Brownsville for the purpose of collecting money from the safe. Upon entering the station, he discovered the attendant, Joseph A. Howse, lying on the floor behind the counter. Mr. Howse appeared to be dead. The door of the cash register was open and only contained coins. The owner of the station testified that an inventory revealed that $670.15 was taken.

Brownsville Police Chief Jerry Wyatt testified that when he arrived on the scene, he checked the body and found no vital signs. When Mr. Howse's body was found, his right hand was in his pocket with his finger against the trigger of his .22 caliber pistol. It was believed that he had been shot one time in the face but the chief was later advised by the doctor that a second bullet had been removed from the victim. This information was not made known to the general public. Dr. Charles Harlan testified that death was caused by gunshot wounds. He removed two bullets from the body of the victim and delivered them to T.B.I. agent L.R. English.

James Ray Thompson, Jr., was allowed to testify over objection that in March, 1981, while employed at Self Serve Oil in Brownsville, he had been shot by the defendant, and on this occasion he had shot the defendant. Officer Ed Thomason re-sponded to the shooting call and found both men lying on the pavement. He observed a pistol in Mr. Thompson's hand and a second pistol near the defendant. This pistol, identified by Mr. Thompson as being the one used by the defendant during this shooting, was sent to the T.B.I. laboratory where it was compared with the two bullet fragments which had been removed from victim Howse. Firearms examiner Pat Garland testified that the bullet identified as being from the left rib area of Howse's body had definitely been fired from this weapon. The bullet identified as being from the scalp had been fired from a gun having the same characteristics but was too damaged for a positive determination.

Defense witness Willie Bob Bond identified this pistol (Exhibit 1) as being the property of Willie Frank Bunch. Bond testified that on the night of the incident when the defendant got shot he had seen Bunch give this pistol to the defendant as he got out of the car near the service station. Bunch then drove down the street, turned around and returned to the service station, where they heard shots. They drove away after Bunch stated that the defendant had been shot.

Bond said Bunch had previously discussed with him the possibility of robbing the service station where Howse was killed. The reason given for wanting Bond to go in was that Howse knew Bunch, and if Bunch was seen he would have to kill Howse. This conversation took place approximately one month before the murder.

The State called Officer Phillip Gray, who testified that he saw both the defendant and Willie Frank Bunch on the night Joseph Howse was killed. Between 7:30 and 8:00 p.m., he saw them enter the North Side Package Store, which is located about one to one and a half miles from Jerry's Service Station. They purchased beer and left together. At approximately 9:15 p.m., the officer observed Bunch enter the store by himself and purchase another beer. This was approximately fifteen to twenty minutes before Officer Gray heard the call

over the radio concerning the robbery and shooting of Mr. Howse.

James Pickens testified that he had known defendant as Robert Perkins since grammar school. He remembered the night when the defendant was shot and stated that earlier in the day they had been together at the home of defendant's grandmother. Pickens testified that while they were drinking beer and talking, the defendant started telling him about the service station out on Bells Highway where he killed a man and took some money. The defendant's version, as related by Pickens, was that the defendant had stopped at the station for gas and "got into it a little" with the man running the station after the man called him a "nigger". When the man went for his gun, the defendant beat him to the draw and killed him. He took the money and went home. The witness said that he could not remember whether the defendant said he shot the man once or twice. The witness admitted to being high but not drunk and said the defendant was high when they first got together and became drunk during the day.

By written motion filed on the day of trial, the defendant sought to suppress the statement he made to James Pickens for the reason that said statement was conflicting and was in direct conflict with a statement made by the Brownsville Police Department on a supplementary report made on February 2, 1981. At the suppression hearing the defendant alleged that "Mr. Pickens stated one thing to Officer Thomason, or either to a police officer, on the 2nd day of February, and then made a completely different statement as concerns a certain point in this statement to Chief Wyatt ... and this occurred on April 7, 1981." He apparently read from two written reports or statements; one of which quoted Pickens as saying Taylor told him that Willie Frank Bunch was waiting in the getaway car and right after the shooting he and Willie Frank went to Crockett County, and the other which reflected a statement by Pickens that the defendant said "nobody was with him" and after getting the money he went back to Alamo to his home. Neither writing has been preserved in this record but it appears from testimony during trial that Officer Thomason had prepared a supplementary report which included statements allegedly made by Pickens to Chief Wyatt when Thomason was not present. Thomason testified that he did not talk to Pickens. At trial Pickens denied telling anyone that the defendant had said Bunch was waiting in the getaway car or that he and Bunch went to Crockett County.

■ In denying the motion, the trial judge properly determined that any inconsistencies or conflicting testimony would go to the credibility of the witness. The weight and credibility of the testimony of a witness and the reconciliation of conflicts in testimony are matters entrusted exclusively to the jury. *Byrge v. State*, 575 S.W.2d 292 (Tenn.Cr.App.1978). No legal basis for the suppression of this evidence has been shown, and the trial court's denial of the motion to suppress was not error.

We next address the issue raised by the testimony of James Thompson concerning a subsequent crime committed by the defendant.

■ It is well established that in a criminal trial, evidence that the defendant has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is generally not admissible because it is irrelevant. However, if evidence that the defendant has committed a crime separate and distinct from the one on trial is relevant to some matter actually in issue in the case on trial and if its probative value as evidence of such matter is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted. *Bunch v. State*, 605 S.W.2d 227 (Tenn.1980).

■ There were no eyewitnesses to this murder. The bullets recovered from the victim's body constituted the only physical evidence which could point to the guilty party. The State was required, as in all

criminal cases, to establish the identity of the perpetrator of this crime beyond a reasonable doubt. It was essential to the State's case that it connect the defendant to the weapon from which the fatal shots were fired. Evidence that the defendant had possession of this pistol and used it within two months after it was used to shoot the victim was material and relevant. *State v. McKinney*, 603 S.W.2d 755 (Tenn. Cr.App.1980). *See also* D. Paine, *Tennessee Law of Evidence* § 8 (Supp.1981). In admitting this evidence, the trial judge prudently limited the testimony of the witness as to the identification of the defendant and the identification of the gun. Accordingly, the witness testified to the bare essential facts that he was shot by the defendant, wrestled the gun from the defendant and kicked it away. The witness further testified that he shot the defendant. He made positive identification of the gun and the defendant. As heretofore noted, subsequent testing of the gun by a firearms examiner established that it was the murder weapon. The probative value of this evidence is not outweighed by its prejudicial effect, and we find no error in its admission.

■ In challenging the sufficiency of the evidence, the defendant argues that since the uncontradicted proof established that the murder weapon did not belong to the defendant but was delivered to him just shortly before the second shooting incident, it is only reasonable to assume that at the time of the subject homicide, the pistol would have been in the possession of the original owner, Willie Frank Bunch. He says any other reasoning would be outside the evidence presented. We do not agree. Given the testimony of Willie Bob Bond detailing the circumstances surrounding the second incident as well as his prior solicitation by Bunch to assist in robbing Mr. Howse, plus the testimony of Officer Gray placing the defendant and Willie Bunch together on the night of the murder, we believe the jury could have reasonably concluded either that Bunch and the defendant acted in concert during the robbery and killing of Howse or at least that the pistol was made available to and possessed by the defendant on the night of the murder.

■ By its verdict the jury has settled any questions as to the credibility of James Pickens, Jr., and has accredited his testimony concerning the admissions made by the defendant. The jury's province being precisely that of determining a witness's credibility, we may not substitute our judgment on appeal for the jury's judgment. *State v. Williams*, 657 S.W.2d 405 (Tenn.1983). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832 (Tenn. 1978). Findings of guilt in criminal actions will be set aside only if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt. T.R.A.P. 13(e).

■ The evidence in this case, including the defendant's statements to Pickens, is quite sufficient to justify a rational trier of fact in finding beyond a reasonable doubt that the defendant committed this homicide during the perpetration of robbery of the victim and is thus guilty of murder in the first degree. The assignments challenging the sufficiency of the evidence must be overruled.

Finally, the defendant relates that two jurors failed to respond affirmatively when asked during voir dire if they had "close personal friends or relatives working with law enforcement". In his written motion for a new trial as well as by his brief and oral argument before this court, the defendant alleges that juror Barbara Poindexter's brother is Jim Parks, Chief Deputy Sheriff in Haywood County, Tennessee, and that juror Martha LaFrain's father, Billy Chandler, was the chief jailer at the Haywood County Work Farm for many years.

Initially, we point out that T.R.A.P. 24(b) requires that:

"... the appellant shall have prepared a transcript of such parts of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."

 If any evidence was adduced at the hearing on the motion for a new trial either to establish the alleged relationship or to show any improper influence on the verdict by the jurors in question, it has not been included in this record. We can only presume therefore that the evidence or the lack thereof supports the trial court's denial of a new trial on this ground. *See State v. Jones,* 623 S.W.2d 129 (Tenn.Cr.App. 1981).

 Being keenly aware that the constitutional guaranty of trial by an impartial jury requires the jury be free of even a reasonable suspicion of bias and prejudice, *Hyatt v. State,* 221 Tenn. 644, 430 S.W.2d 129 (1967), we have studied the transcript of the voir dire and reviewed the authorities dealing with juror disqualification *propter affectum.*

 We hold that the alleged relationship of jurors to people connected with law enforcement, even if true, does not give rise to an inherently prejudicial situation in and of itself.

We find no evidence suggesting that the jurors answered any questions falsely or withheld requested information.

Ms. Poindexter was among the first twelve prospective jurors called and was in the jury box when the following statements were made by defense counsel:

"... Is there anybody else because of their relationship with Mr. Howse feel that they could not listen to the evidence and weigh it and be fair and impartial to both the State and to Mr. Taylor? I might ask you this, there will be Chief of Police officers testifying and there may be a sheriff's deputy or the sheriff or someone—Lucian English may testify. Does anybody know any of these people on a close basis, such that whatever they said, that you just could not weigh it with the other testimony and just sort of weigh it and average it out? In other words, whatever they said would that be believed because of your—either by knowing them or your relationship with them, over anything else that was said? In other words, would you give them—their testimony much more weight and just rule out anything else that was said by other people? Would any of you do that because of the fact that you know the sheriff or sheriff deputies or Jerry Wyatt, or one or two of the police officers. Would that affect any of you all's decision about the case?

"(No response)

"Do any of you have a close personal friend on either the sheriff's department or the City Police Department?

"(No response)"

After several prospective jurors were excused, Mrs. LaFrain and three others were brought forward. After questioning by the prosecutor, defense counsel asked the following questions:

"I think you all are getting the gist of our line of questioning. What we're trying to do is make sure everybody can listen to what's going to occur, and fairly and impartially determine the facts in this case. The things that I've asked you, if you know the sheriff deputies or police officers, all these, I think, go to a negative subconscious. You might not be thinking that that would have an effect, but sometimes when it's brought out to you it does have an effect when it's brought out in the light and you do actually think about it for a minute. Were any of you—except for the four and I'm speaking with the four now, I've gone over these, but were any of you close to Mr. Howse or any of his family prior to this—prior to February of '81? Mr. Castellow, were you? Did any of you do business with Jerry's Oil Company or see him on a regular basis, any of the four?

"(No response)

"Have any of you either served in law enforcement or know a person that's in

law enforcement very closely, such that that might tend to keep you from giving a fair and impartial decision? Mr. Curry? Mr. Cunningham?"

The failure of Poindexter and LaFrain to volunteer information concerning the alleged relationships under the questions as asked does not establish a prima facie case of bias or partiality on the part of either juror. *Durham v. State,* 182 Tenn. 577, 188 S.W.2d 555 (1945). In the absence of questions calculated to produce the specific answers, we believe the defendant has waived his right to object to the failure of the jurors to volunteer the information. *Monday v. State,* 160 Tenn. 258, 23 S.W.2d 656 (1930); *Clariday v. State,* 552 S.W.2d 759 (Tenn.Cr.App.1976).

Finally, there being no evidence in the record showing actual favor or partiality on the part of either juror affecting the outcome of the trial, we find the assignment challenging this jury to be without merit, and it is accordingly overruled.

Finding no error which would require reversal, we affirm this conviction.

WALKER, P.J., and TATUM, J., concur.