IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1997 SESSION

FILED

December 12, 1997

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE          )
                            )     01-C-01-9607-CC-00311
        Appellee,           )
                            )
                            )     RUTHERFORD COUNTY
v.                          )
                            )     HON. J. S. DANIEL
                            )
GAYLE T. PARSONS, JR.       )
                            )     (Rape of a Child)
        Appellant.          )
                            )
                            )

For the Appellant

Guy R. Dotson
102 South Maple Street
Murfreesboro, TN. 37130

Joe M. Brandon, Jr.
304-D South Lowry Street
Smyrna, TN. 37167

For the Appellee

Charles W. Burson
Attorney General and Reporter

Eugene J. Honea
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN. 37243

William C. Whitesell, Jr.
District Attorney General
303 Rutherford Co. Judicial Building
Murfreesboro, TN. 37130

John W. Price III
Assistant District Attorney General
303 Rutherford Co. Judicial Building
Murfreesboro, TN. 37130

OPINION FILED:_____

AFFIRMED

WILLIAM M. BARKER, JUDGE

**OPINION**

The appellant, Gayle T. Parsons, appeals as of right the convictions and sentences he received in the Circuit Court of Rutherford County. In 1995, he was indicted by a grand jury on four counts of rape of a child in violation of Tennessee Code Annotated section 39-13-522 (Supp. 1995). After a trial by jury, the appellant was convicted on two counts of rape of a child and was sentenced as a child rapist[1] to twenty two (22) years on each count.[2] The sentences were ordered to run consecutive to each other for a total effective sentence of forty four (44) years in the Tennessee Department of Correction.

The appellant raises four issues on appeal. He contends that: (1) The indictment was defective in failing to include the requisite mental state for the offenses of child rape; (2) The jury received extraneous and prejudicial information from a biased juror in violation of his right to a fair and impartial jury; (3) The trial court erred in allowing the testimony of a registered nurse regarding the medical causation of the victim's injuries; and (4) The trial court erred in sentencing him to a consecutive sentence of forty four (44) years.

After a careful review of the record, we affirm the judgment of the trial court.

**FACTUAL BACKGROUND**

S.H.,[3] the victim in this case, was ten years old when she was raped by the appellant. The offenses occurred on several occasions during the Fall of 1993 when S.H. was living in Smyrna, Tennessee with her mother, her little sister, and the appellant. At that time, her mother, Connie Holmes Parsons, had recently divorced

---

[1]The appellant was sentenced as a Child Rapist under Tennessee Code Annotated section 39-13-523(b). That provision requires him to serve the entire forty four (44) year sentence undiminished by any sentence reduction credits he may otherwise be eligible to receive.

[2]The State entered *nolle prosequi* as to counts one and two of the four count indictment.

[3]Due to the young age of the victim and the nature of the offenses, we identify the victim by initials only.

S.H.'s natural father, Sherlock Holmes, and had begun dating the appellant.[4] Ms. Parsons eventually married the appellant on February 4, 1994.

According to S.H.'s testimony at trial, the appellant committed the first act of rape on August 27, 1993, the date of appellant's birthday. S.H. testified that during that evening, her mother took her into the bathroom of their apartment and explained that the appellant desired to have sexual relations with her.[5] S.H. expressed that she did not want to participate in any sexual acts; however, she reluctantly agreed at her mother's request. Her mother, thereafter, took her into the living room where S.H. and the appellant removed their clothing and engaged in vaginal intercourse. S.H. testified that the appellant was unable to fully penetrate her vagina with his penis; however, she explained that after several attempts, he forced his penis inside of her which caused extensive bleeding.[6]

S.H. testified that two more sexual encounters occurred between her and the appellant during the months following the appellant's birthday. The second encounter occurred almost three weeks after the first. On that occasion, the appellant entered S.H.'s bedroom late at night and carried her back to the bedroom he shared with her mother. With Ms. Parsons watching, S.H. performed oral sex on the appellant at his request. The appellant then attempted once again to have vaginal intercourse with S.H.. When he was unable to penetrate her vagina with his penis, he forced her to

_____

[4]S.H.'s natural father moved to Ohio after the divorce and continued to live there when the rape offenses occurred.

[5]According to the testimony of Connie Parsons, the appellant had a fantasy about having sexual relations with two women at the same time. Ms. Parsons told S.H. that if she did not agree to have sex with the appellant on his birthday, then he would pursue his sexual fantasies with Ms. Parsons' sister, Molly Parsons. The appellant and Molly Parsons were formally married to each other and had two children. Molly Parsons testified at trial that the appellant never talked to her about wanting to have sex with two women at once. She further testified that she and the appellant never engaged in sexual intercourse after their divorce.

[6]The facts surrounding that sexual encounter are truly deplorable. According to S.H., she and her mother got undressed together with the appellant in the living room of their apartment. The appellant proceeded to have oral sex and vaginal intercourse with Ms. Parsons apparently to show S.H. how to do it. S.H. testified that the appellant next tried to have vaginal intercourse with her. He searched the apartment for Vaseline and penetrated S.H.'s vagina with his fingers to facilitate the sexual intercourse. S.H. struggled against the appellant and continuously resisted his attempts to penetrate her vagina with his penis. Nevertheless, she admitted that he almost fully entered her vagina before she ran away to the bathroom.

have rectal intercourse with him.

The third and final encounter also occurred late at night in the appellant's bedroom. On that occasion, S.H. performed oral sex on the appellant before he attempted to have vaginal intercourse with her. S.H. testified that the appellant was once again unable to fully penetrate her vagina with his penis; however, she stated that the appellant forced her to have rectal intercourse. He then ordered her to watch and participate in sexual activities between him and Ms. Parsons.

S.H.'s testimony was corroborated by the testimony of her mother, Connie Parsons. Although Ms. Parsons testified that the sex offenses began after the appellant's birthday, she vividly described two sexual encounters that matched the descriptions given by S.H.. Ms. Parsons testified that during the two encounters, the appellant would become violent and threaten to harm her if she did not allow him to have sex with S.H.. On the first encounter, she admitted that she took S.H. into the bathroom and asked her to perform sexual acts with the appellant. She further admitted that she watched as the appellant engaged in vaginal intercourse with S.H. on their living room floor.

As to the second encounter, Ms. Parsons testified that she entered S.H.'s room late at night and took her to the appellant's bedroom. She testified that S.H. performed oral sex on the appellant before he attempted to have vaginal intercourse with her. According to Ms. Parsons, the appellant was unable to fully penetrate S.H.'s vagina with his penis; however, he forced her to have rectal intercourse instead. He then ordered S.H. to watch and participate as he engaged in vaginal intercourse with Ms. Parsons.

Sue Ross, a registered nurse with the "Our Kids" child care center, testified that on November 8, 1994, she performed a medical exam on S.H.. Her examination revealed that S.H. had a tear in the hymenal tissue of her vagina, consistent with

4

penetration of an adult penis.[7] According to her testimony, S.H. had not yet entered puberty at the time of the examination. Ms. Ross opined that the tear in S.H.'s vagina was not caused by accidental penetration or natural development.

Another medical examiner, Doctor Sudha Saraswat,[8] testified that the tear in S.H.'s hymenal tissue might have been a result of natural development. Doctor Saraswat examined S.H. on August 9, 1994, and found that she was missing part of the hymenal tissue in her vagina and that her vaginal opening was ten (10) millimeters in diameter. Although those findings were consistent with the findings of Sue Ross, Doctor Saraswat opined that they were not conclusive of sexual abuse. Instead, Doctor Saraswat testified that she could not rule out the possibility of S.H.'s medical condition being attributed to her natural development.

The appellant testified in his own defense that he had never engaged in any sexual activity with S.H.. He asserted that S.H. had made up the allegations of rape because she desired to live with her natural father in Ohio. To support his theory, he presented testimony from Kathy Custer, a social worker with the Tennessee Department of Human Services. Ms. Custer interviewed S.H. on August 6, 1994, in which S.H. discussed her sexual encounters with the appellant. According to Ms. Custer, S.H. was extremely emotional and partially confused as to the details surrounding the sexual offenses. However, on cross examination, Ms. Custer admitted that S.H.'s difficulties were normal considering the degree of embarrassment and regret that she experienced during the interview.[9]

---

[7]Ms. Ross explained that when she examines a child, she uses the face of a clock as a measurement for any vaginal injury. In this case, her examination of S.H. revealed that S.H. is missing hymenal tissue equal to the space between 6:30 and 7:30 on a clock. She opined that the gap is consistent with non-accidental penetration of an object in the shape of an adult penis. She further explained that the insertion and use of a tampon would not cause that degree of gap in the hymenal tissue.

[8]Doctor Saraswat obtained her medical degree in India before moving to Murfreesboro, Tennessee where she currently practices as a pediatrician.

[9]The appellant also relied on the testimony of two other witnesses in his defense. There was testimony from Doctor Thomas Murphy, a Ph.D. in clinical psychology, concerning a variety of psychological tests and evaluations that he had conducted on the appellant. According to Doctor Murphy, the appellant suffered from a borderline personality disorder due to his chronic pattern of

From the above evidence, the appellant was convicted by a jury on two counts of rape of a child and was sentenced to consecutive terms of twenty two (22) years on each count.[10]  In this appeal, he challenges both his convictions and sentences.

**ANALYSIS**

The appellant first challenges the validity of the indictment charging him with four counts of rape of a child.  He contends that the indictment was fatally deficient in failing to include the requisite *mens rea* for the child rape offenses.

This issue is without merit.

The appellant relies on this Court's opinion in State v. Roger Dale Hill, Sr., No. 01C01-9508-CC-00267 (Tenn. Crim. App. at Nashville, June 20, 1996), to assert that his indictment was defective.  Our supreme court, however, has recently reversed the decision in that case.  See State v. Roger Dale Hill, Sr., No. 01S01-9701-CC-0005 (Tenn. at Nashville, November 3, 1997).  The Court recognized that modern statutory codes serve to avoid the hypertechnical nature of common law pleading.  Therefore, according to the Court, an omission of the *mens rea* element from an offense is not always fatal to an indictment.  Slip op. at 5-6.  The Court held that an indictment is legally sufficient if:  (1) Its language satisfies the constitutional requirement of notice to the accused, (2) Its form meets the requirements set forth in Tennessee Code Annotated section 40-13-202,[11] and (3) The requisite mental state can be logically

---

instability in interpersonal relationships, his chronic impulsiveness, his alcohol abuse, his low self esteem, and his broad mood ranges.  Doctor Murphy opined that the appellant is constantly dependent on affection and attention from females; however, he concluded that the appellant is not a pedophile.

There was also testimony from Laura Williams, a lieutenant detective with the Smyrna Police Department.  Detective Williams testified that she drove from Smyrna, Tennessee to pick up the appellant and Connie Parsons after they had been apprehended in Clarksville.  During the drive back to Smyrna, Detective Williams observed the couples' demeanor in the patrol car and she indicated that they appeared relaxed and very affectionate towards each other. Detective Williams also testified concerning pretrial statements given by Ms. Parsons and S.H..  She indicated that Ms. Parsons' final statement, describing the sexual encounters between the appellant and S.H., was consistent with the information provided by S.H..

[10]In a separate proceeding, Connie Parsons pled guilty to two counts of criminal responsibility for the facilitation of rape of a child.

[11]Under Tennessee Code Annotated section 40-13-202 (1997), an indictment must state the charged offenses in ordinary and concise language that will provide the accused with a common understanding and will enable the trial court to enter a proper judgment.

6

inferred from the alleged criminal conduct. Slip op. at 3.

In this case, counts three and four of the indictment stated in pertinent part:

> [O]n the ___ of September, 1993, approximately two weeks after the events described in Count I, in the County and State aforesaid, and before the finding of this indictment, Gayle Parsons and Connie Parsons, Connie Parsons being criminally responsible for the acts of Gayle Parsons as per T.C.A. 39-11-402(2) did sexually penetrate [S.H.], a child less than thirteen (13) years of age, in violation of T.C.A. 39-13-522, and against the peace and dignity of the State of Tennessee.

> [O]n or between the date(s) of Count III and Christmas of 1993, in the County and State aforesaid, and before the finding of this indictment, Gayle Parsons and Connie Parsons, Connie Parsons being criminally responsible for the acts of Gayle Parsons as per T.C.A. 39-11-402(2) did sexually penetrate [S.H.], a child less than thirteen years of age, in violation of T.C.A. 39-13-522, and against the peace and dignity of the State of Tennessee.

We find that the *mens rea* element can be inferred from the indictment language charging the appellant with four separate counts of rape of a child. The indictment sets forth the statutory provision making it a Class A Felony for anyone to unlawfully sexually penetrate a victim, if the victim is less than thirteen (13) years of age. Tenn. Code Ann. § 39-13-522. Moreover, the indictment states the facts constituting the offenses and provides the appellant with sufficient notice of the charges as mandated by our constitution. Accordingly, we conclude that the indictment is valid.

## II.

The appellant next contends that he was deprived of a fair and impartial jury because of juror misconduct during voir dire. One of the seated jurors, Joyce McInturff, admitted during jury deliberations that her father had sexually assaulted her when she was a child. During voir dire, however, she remained silent and did not disclose any information pertaining to her experience. The appellant argues that Ms. McInturff's conduct exposed the jury to extraneous and prejudicial information.

Although we find that Ms. McInturff should have disclosed her past experience during voir dire, we find no evidence that she was biased against the appellant or that

7

her comments exposed the jury to extraneous or prejudicial information.

The right to trial by an impartial jury is a cornerstone of our criminal justice system. That fundamental right, as guaranteed by Article I, Section 9 of the Tennessee Constitution and the Sixth Amendment to the United States Constitution, requires the jury be free of even a reasonable suspicion of bias and prejudice. See Hyatt v. State, 430 S.W.2d 129, 130 (Tenn. 1967). The appellant bears the burden of proving a prima facie case of bias and impartiality on the part of the jury. See State v. Taylor, 669 S.W.2d 694, 700 (Tenn. Crim. App. 1983), *per. app. denied* (Tenn. 1984).

In this case, the appellant first points to Ms. McInturff's silence during voir dire to show that she prejudiced the outcome of his case. During voir dire, the assistant district attorney general asked the prospective jurors whether anyone in the group had a family member or close friend who has been charged with rape or some type of sexual crime. Ms. McInturff did not respond to the State's question. The prosecutor next asked whether anyone on the panel had been close to a victim, including a friend or family member, who has been sexually abused in some way. One juror admitted that she had been a victim of a rape involving a male friend. However, Ms. McInturff remained silent and provided no information concerning her personal experience.[12] She was thereafter impaneled as a juror and she participated in the deliberation of the appellant's case.

After conviction, another juror informed defense counsel about Ms. McInturff's comments during the deliberations. Appellant raised a *propter affectum*[13] challenge in his motion for a new trial, arguing that Ms. McInturff's silence during voir dire raised a

---

[12]Counsel also asked if any of the prospective jurors felt strongly about or had any comments to make regarding the prior questions he had asked them during voir dire. Once again, Ms. McInturff remained silent.

[13]Juror disqualifications are based upon either *propter defectum* or *propter affectum*. See State v. Furlough, 797 S.W.2d 631, 652 (Tenn. Crim. App. 1990). *Propter defectum* disqualifications pertain to general relationships including familial ties between a juror and a party or witness at trial. See id. Those disqualifications must be made before the jury renders a verdict. See id. *Propter affectum* disqualifications, however, are based upon a juror's bias or partiality towards a particular party or witness at trial. See id. Those disqualifications may be raised after the jury returns its verdict. See id. In this case, the appellant's challenge is *propter affectum* because he contends that a juror was biased against him.

8

presumption of bias that ultimately prejudiced the outcome of his case.

The appellant relies on our supreme court's decision in State v. Akins, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993). In Akins, the Court held that when a juror willfully conceals or fails to disclose information on voir dire which reflects on the juror's lack of impartiality, a presumption of prejudice arises. See id. However, that presumption may be dispelled in cases where there is an absence of actual partiality on the part of the juror. See id. at 357. In this case, we find that any presumption of bias was completely dispelled by evidence that Ms. McInturff acted impartially and objectively as a member of the jury.

At the hearing on the motion for a new trial, Ms. McInturff testified that she remained silent during voir dire because she believed her objectivity would not be compromised by her past experience. She further explained that the questions during voir dire did not require her to disclose her personal experience. According to her testimony, no charges had ever been brought against her father for the sexual assault. Moreover, she indicated that she had resolved the experience during her childhood and had never let it affect her adult life.

Her testimony, as corroborated by two other jurors, also revealed that she had initially voted to acquit the appellant. The jury vote was nine (9) to three (3) in favor of a guilty verdict at the time she disclosed her past experience. As the deliberations continued, the nine jurors who favored a guilty verdict began questioning Ms. McInturff as to why she was voting for an acquittal. Ms. McInturff responded that, "I am trying to be a good juror. I'm trying to weigh all of the arguments in the case, all of the evidence." At that point, she confessed that she had been abused as a child by her father and that she could relate to the victim in this case. However, she indicated that despite her past experience, she was focused on reviewing all the evidence and deciding the case objectively.

Two other jurors, Faye Hubbard and Francis Muscatell, testified that they observed Ms. McInturff's confession during the deliberations. According to their

9

testimony, Ms. McInturff was among the three jurors in favor of an acquittal at the time she broke down and revealed her past experience. After she disclosed her personal experience, she and the other jurors continued to deliberate for another two hours before rendering a unanimous verdict to convict the appellant. Ms. Hubbard and Mr. Muscatell both testified that Ms. McInturff's comments did not bias their decision to convict the appellant. Furthermore, based upon the jury's discussion of the evidence during deliberation, they opined that every juror focused closely on the evidence and remained objective in rendering the verdict.

From that evidence, we find that any presumption of bias, arising from Ms. McInturff's silence during voir dire, was completely dispelled by her impartiality throughout the case. Although we agree that Ms. McInturff should have disclosed her past experience during voir dire, we find no evidence that she was biased against the appellant or that her participation as a juror exposed the jury to any extraneous information. To the contrary, Ms. McInturff's comments about her past experience had absolutely no bearing on whether the appellant committed the sexual offenses against S.H.. In light of the overwhelming evidence against the appellant, we find that any possible prejudice from Ms. McInturff's participation as a juror is harmless beyond a reasonable doubt.

Moreover, there is no evidence that Ms. McInturff prejudiced the jury against the appellant. The jury vote was already nine (9) to three (3) in favor of a guilty verdict when Ms. McInturff revealed her personal experience. Ms. McInturff never advocated or suggested, directly or indirectly, that the appellant should be convicted because of her experience. Instead, she was one of the three jurors who originally voted to acquit the appellant. The record demonstrates that she and the other jurors took great care in reviewing the evidence objectively and rendering a fully deliberated verdict against the appellant. We, therefore, conclude that the appellant has not carried his burden to show that Ms. McInturff was biased or impartial or that her presence on the jury prejudiced the outcome of his case.

**III.**

The appellant next contends that the trial court erred in allowing the testimony of a registered nurse regarding the medical causation of the victim's injuries. He argues that Sue Ross, a registered nurse, was not qualified to testify as an expert under the Tennessee Rules of Evidence.

This issue is without merit.

Rule 702 of the Tennessee Rules of Evidence provides that, "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." To qualify as an expert, a witness must have experience or education within an area of knowledge or expertise beyond the scope of common knowledge. See Kinley v. Tennessee State Mutual Insurance Co., Inc., 620 S.W.2d 79, 81 (Tenn. 1981).

In this case, the trial court found that Sue Ross was a licensed registered nurse who has a Master of Science degree in Nursing from Vanderbilt University and a Bachelor of Science degree in Nursing from the University of Tennessee at Memphis. Additionally, Ms. Ross has qualified in prior cases as an expert in her field of pediatric nursing and she had examined S.H. through her work as a Nurse Practitioner at the "Our Kids" child care clinic. From that evidence, the trial court concluded that Ms. Ross was qualified as an expert to testify about S.H.'s injuries.

The trial court has broad discretion in determining the admissibility of expert testimony. See Otis v. Cambridge Mutual Fire Insurance Co., 850 S.W.2d 439, 443 (Tenn. 1992). When the trial court concludes that a witness qualifies as an expert and the witness testifies within the scope of her expertise, then the trial court's decision will not be overturned absent an abuse of discretion. See State v. Rhoden, 739 S.W.2d 6, 13 (Tenn. Crim. App. 1987), *per. app. denied* (Tenn. 1987).

We find that the trial court did not abuse its discretion in allowing Ms. Ross to testify concerning S.H.'s injuries. Ms. Ross performed a physical examination of S.H. and found that she had a tear in the hymenal tissue of her vagina. Based upon that finding, Ms. Ross opined that the tear was consistent with non-accidental penetration from an object in the shape of an adult penis. Her testimony was clearly within the scope of her expertise as a licensed pediatric nurse. Therefore, the trial court properly admitted her testimony into evidence.

**IV.**

The appellant next contends that the trial court erred in sentencing him to consecutive twenty two (22) year sentences on the two counts of rape of a child. He argues that the trial court improperly relied on the same enhancement factors both to increase his sentences and to order them to run consecutively.

This issue is without merit.

When an appellant complains of his sentence, we must conduct a *de novo* review of the record. See Tenn. Code Ann. § 40-35-401(d) (Supp. 1995). The sentence imposed by the trial court is accompanied by a presumption of correctness and the appealing party carries the burden of showing that the sentence is improper. See Tenn. Code Ann. § 40-35-401 (Sentencing Commission Comments). The presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In this case, the trial court considered the principles of sentencing and the totality of the evidence before sentencing appellant to twenty two years on each count of rape of a child. The trial court applied the following enhancement factors: (1) The appellant has a previous history of criminal convictions or criminal behavior; (2) The appellant was a leader in the commission of the offenses involving two or more criminal actors; (7) The offenses involved a victim and were committed to gratify the

12

appellant's desire for pleasure and excitement; (8) The appellant has a previous history of unwillingness to comply with the conditions of a sentence involving community release; and (15) The appellant abused a position of private trust that significantly facilitated the commission of the offenses.  Tenn. Code Ann. § 40-35-114 (1), (2), (7), (8), and (15) (Supp. 1995).[14]  The trial court did not find any mitigating factors.

The appellant does not challenge the application of the five enhancement factors to his sentences.  He contends instead that the trial court erred in relying on the same enhancers both to increase his sentences and to order consecutive sentencing.

On the issue of consecutive sentencing, the trial court relied on Tennessee Code Annotated section 40-35-115(b)(5), which states that:

> The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that: (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

The trial court applied the above language and found that the appellant had a relationship with the victim which he used to commit the multiple sexual offenses.  Furthermore, his criminal acts against the victim were particularly heinous and were undetected for an extended period of time.  The trial court, therefore, ordered appellant's sentences to be served consecutively.

From our *de novo* review, it is apparent that the trial court considered the appellant's private relationship with the victim both to enhance his sentences and to

---

[14]The State contends that enhancer (5) should also apply to the appellant's sentences.  Tenn. Code Ann. § 40-35-114 (5) (Supp. 1996).  Enhancer (5) applies in cases where the defendant treats or allows the victim to be treated with exceptional cruelty during the commission of the offense.  In this case, we find that the appellant treated S.H. with exceptional cruelty during the commission of the sexual offenses.  The evidence shows that after the appellant had rectal intercourse with S.H., he required her to watch and participate as he engaged in vaginal intercourse with S.H.'s mother.  That evidence supports the application of Enhancer (5).  The State, however, has not requested this Court to increase appellant's sentences upon applying Enhancer (5).

order consecutive sentencing.[15] The appellant argues that the trial court's consideration was improper; however, he cites no authority to support his contention. Our review of the applicable law indicates that the trial court had ample authority to support its decision.[16] This Court has previously determined that, "[t]here is no prohibition in the 1989 Sentencing Act against using the same facts and circumstances both to enhance sentences under applicable enhancement factors and to require those sentences to be served consecutively." See State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993). We, therefore, conclude that the trial court properly considered appellant's relationship with the victim both to enhance his sentences and to impose consecutive sentencing.

Furthermore, our *de novo* review reveals that the length and consecutive nature of appellant's sentences are supported by separate facts. The appellant has a prior history of criminal behavior, he was the leader in committing the sexual offenses, he committed the offenses against the victim to obtain personal pleasure and excitement, and he has demonstrated an unwillingness to comply with conditions of community release. Tenn. Code Ann. § 40-35-114 (1), (2), (7), and (8). Moreover, the record reflects that the appellant manipulated his private relationship with the victim to commit the sexual offenses over an extended period of time. Those undisputed factors support the consecutive, twenty two (22) year sentences on each count of rape of a child.

Additionally, we find that appellant's consecutive sentences reasonably relate

---

[15]The trial court relied on the appellant's relationship with S.H. to enhance his sentences under Tennessee Code Annotated section 40-35-114 (15) (Supp. 1995). The trial court further relied on that relationship to order consecutive sentences under Tennessee Code Annotated section 40-35-115 (b)(5).

[16]See State v. Franklin, 919 S.W.2d 362, 366-67 (Tenn. Crim. App. 1995), *per. app. denied* (Tenn. 1996) (upholding the trial court's decision to enhance appellant's sentences and to impose consecutive sentencing based upon the fact that appellant committed the criminal offenses while on probation); State v. Meeks, 867 S.W.2d (Tenn. Crim. App. 1993) (upholding the use of appellant's prior criminal activity both to enhance his sentences and to require consecutive sentencing). State v. James A. Hester, No. 01C01-9410-CC-00352, (Tenn. Crim. App., at Nashville, May 17, 1995) (holding that the use of the same facts both to enhance sentences and to impose consecutive sentences does not violate the double jeopardy clause of either the Tennessee Constitution or the United States Constitution).

to the severity of his crimes and serve to protect the public from his possible future criminal activity.  See State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995).  The record reveals that the appellant has a history of criminal behavior that has not been rehabilitated, but instead, has become increasingly more severe throughout his life.  In this case, his acts of rape and manipulation against a helpless, young victim were extremely heinous and reflect a need to protect society from his future criminal behavior.

Based upon the foregoing, the judgment of the trial court is affirmed.


_____
WILLIAM M. BARKER, JUDGE



CONCUR:


_____
JOE B. JONES, Presiding Judge


_____
THOMAS T. WOODALL, JUDGE