IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 12, 2025 Session

## RONNIE LEE CLAYBORN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Fentress County**
**No. 2023-CR-70    Zachary Walden, Judge**

_____

### No. M2025-00317-CCA-R3-PC

_____

The Petitioner, Ronnie Lee Clayborn, appeals from the Fentress County Criminal Court's denial of his petition for post-conviction relief from his convictions for rape of a child and incest. The Petitioner alleges that the post-conviction court erred by denying him relief on his claim that he was denied a fair and impartial jury. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Evan M. Wright, Livingston, Tennessee, for the appellant, Ronnie Lee Clayborn.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jared Effler, District Attorney General; and Apryl Bradshaw, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Fentress County Grand Jury indicted the Petitioner for rape of a child and incest. In January 2020, the Petitioner was convicted on both charges after a jury trial, and the Petitioner's convictions were affirmed on appeal. *See State v. Ronnie Lee Clayborn*, No. M2021-00656-CCA-R3-CD, 2022 WL 2817162 (Tenn. Crim. App. July 19, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022). The Petitioner sought post-conviction relief alleging a violation of his right to a fair and impartial jury because, during jury selection, the person who became the jury foreman failed to disclose that he

knew two Fentress County Sheriff's Department (FCSD) witnesses and had previously worked in law enforcement.

At the post-conviction hearing, the jury foreman testified that this was his first time serving on a jury. The foreman stated that he understood his role as a juror was to listen to the facts and reach a verdict after deliberating with other jurors. He agreed that his life experiences influenced how he perceived facts at the trial. The foreman said he was unfamiliar with the process of jury selection but recalled that the attorneys asked prospective jurors questions regarding whether anyone had prior knowledge of the case. He did not recall being asked during voir dire whether he had any experience with the criminal trial process or with the grand jury, in particular.

The jury foreman testified that he had previously worked as a FCSD dispatcher for approximately five years and as a corrections officer for "less than a year." He said that he worked as a deputy during 2003 and 2004, that he did not work with FCSD Deputy Jason Duncan, and that Deputy Duncan did not work as a dispatcher during the time he worked for the department. The foreman said he never worked for the current Fentress County Sheriff, Michael Reagan, that he might have worked with him when Sheriff Reagan was a deputy, and that he had known Sheriff Reagan for several years. The foreman said that FCSD Deputy Anthony Gunter was an "acquaintance[] from school" and that he did not know Deputy Gunter well enough to have an opinion regarding his truthfulness.

The jury foreman testified that as a deputy he investigated crimes involving theft and automobile wrecks and also enforced highway laws. He stated that he was never involved with sex crime cases, although he might have overheard discussions regarding those types of investigations. He recalled testifying in court on only one occasion regarding a theft, which also required his testimony before the grand jury. The foreman acknowledged that he knew the deputies who testified at the trial but did not relate that fact to anyone. The foreman also acknowledged that he did not tell anyone during voir dire that he understood some aspects of the criminal trial process. He stated that he believed his law enforcement background would be relevant to jury service if he were currently working in law enforcement and that any familiarity he had with the deputies did not change his opinion of their credibility.

On cross-examination, the jury foreman testified that he worked as a dispatcher approximately thirty years ago, that he worked as a full-time deputy for only one year, and that he worked part-time as a deputy for another year. He said that at the time of the trial he had not worked in law enforcement for over fifteen years. He said that he never worked with Deputy Duncan or Deputy Gunter, and that when he was asked about whether he knew or had a relationship with the deputies, he understood the question to

ask whether he "knew them personally" and that because he never worked with the deputies, "there was nothing to let [the court] know[.]"

During voir dire, the jury foreman's panel was asked the following question:

Is there anything about your experience in general with law enforcement or with the Court system that would - you would just have to say, you know, I just - let's face it. We're here in 2020, and we watch TV and we listen to the news and all that kind of stuff. And there's people that just flat out do not like police. Doesn't matter if you know them or not, doesn't matter if you've ever seen them or not, there's people that just hate police. Would you be honest enough to tell me if you feel that way?

The foreman said he understood that question to ask whether he had a "problem with officers," which he said he did not. When asked "was there anything in your background that would cause you reservations about sitting on this trial today," he did not answer because he did not consider his past law enforcement experience to cause him reservations. He said that he had "been away" from law enforcement for "enough time" that it would not be a concern. The foreman stated that he did not understand any question to ask whether he had worked in law enforcement and that he believed he answered all the questions honestly. He said that he did not believe that his prior law enforcement experience affected his deliberations at the trial or bolstered the credibility of the deputies who testified and that, to the contrary, he had concerns about the investigation and was critical of the sheriff's department.

On redirect examination, the jury foreman testified that he did not remember telling anyone at the time of the trial that he knew the deputies. He acknowledged that he knew them. On recross-examination, the foreman said that he had only spoken with the deputies "in passing."

The Petitioner was represented by two counsel at the trial. Both testified at the post-conviction hearing and agreed that they would have asked additional questions of any juror who said that he or she had worked in law enforcement or knew some of the witnesses. One attorney stated that a juror's experience in law enforcement would be "very material" information and that "[i]f they've got a law experience – law enforcement experience, that's the person you're going to exclude." The attorney also stated that he would expect a juror to reveal any law enforcement experience if asked a question about whether anything in the juror's background would cause the juror to have reservations about serving on the jury.

After hearing the testimony and the arguments, the post-conviction court rendered its decision. The court credited the jury foreman's testimony and made the following

-3-

factual findings: (1) the foreman only knew Deputy Gunter from attending school with him and did not disclose that fact during voir dire; (2) the foreman never worked with Deputy Duncan, did not know him except in passing, and did not disclose that fact during voir dire; (3) the foreman was never directly asked whether he knew Deputy Gunter or Deputy Duncan; (4) no jurors were asked whether they knew Sheriff Reagan; (5) the foreman was never asked if he had been a witness in a criminal case or involved in a grand jury proceeding; (6) the foreman was never asked if he had a family member who had been a victim of a crime or whether he had been present at a court proceeding involving a family member; and (7) the foreman gave honest answers during voir dire.

The post-conviction court concluded that the Petitioner failed to establish that the jury foreman was presumptively biased. The court also concluded that the foreman "did not know the [deputies] except as to recognize their identity and speak in passing" and "did not have bias toward the law enforcement witnesses." The court found that "neither the judge, the District Attorney, nor trial counsel asked any juror about their prior employment" and that the foreman did not conceal information about his prior employment. The court found that the record did not support the Petitioner's contention that the foreman was asked whether he understood different aspects of the criminal trial process. The court denied relief, finding the Petitioner had not proven by clear and convincing evidence that the foreman was presumptively or actually biased. This appeal followed.

The Petitioner alleges that the post-conviction court erred by denying relief on the Petitioner's claim that he was deprived of a fair and impartial jury. The State counters that the court did not err by denying relief because the Petitioner did not establish a prima facie case of juror bias. Alternatively, the State asserts that even if the Petitioner established a presumption of bias, the State overcame the presumption by showing an absence of actual prejudice or partiality.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2025). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2025). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

A criminal defendant is constitutionally entitled to a trial "by an impartial jury." U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *State v. Adams*, 405 S.W.3d 641, 650

-4-

(Tenn. 2013). In reaching its verdict, the jury must rely only upon the trial evidence, which it weighs in light of its own knowledge and experience. *Adams*, 405 S.W.3d at 650 (citing *Caldararo ex rel. Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738, 743 (Tenn. Ct. App. 1990)). A juror's qualification may be challenged based on bias or prejudice "actually shown to exist or presumed to exist from circumstances." *State v. Akins*, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993) (citations omitted).

A petitioner bears the burden of providing a prima facie case of a juror's bias or partiality. *Id.* (citing *State v. Taylor,* 669 S.W.2d 694, 700 (Tenn. Crim. App. 1983)). "Whether a juror's partiality may be presumed from the circumstances is a question of law." *Smith v. State*, 357 S.W.3d 322, 348 (Tenn. 2011). A presumption of bias arises "[w]hen a juror willfully conceals (or fails to disclose) information" in answer to a material "question reasonably calculated to produce the answer" or a juror makes a false disclosure. *Akins*, 867 S.W.2d at 355-56 (citations and footnotes omitted). A juror's silence in response to a question that is "reasonably calculated to produce an answer is tantamount to a negative answer." *Id.* at 355 (citations omitted). "We have never presumed bias absent either an affirmative statement of bias, willful concealment of bias, or failure to disclose information that would call into question the juror's bias[.]" *Smith,* 357 S.W.3d at 348. "While that presumption may be rebutted by an absence of actual prejudice, the court must view the totality of the circumstances, and not merely the juror's self-serving claim of lack of partiality, to determine whether the presumption is overcome." *Akins*, 867 S.W.2d at 357.

The record does not preponderate against the post-conviction court's findings of fact. The post-conviction court credited the jury foreman's testimony and found that he was not asked whether he knew the deputies or about his prior experience with the criminal trial process. The record reflects that the initial jury panel was asked if anyone knew Deputy Gunter or Deputy Duncan. The foreman was not in that initial panel but was in the courtroom with the remainder of the jury venire. When the foreman was called as part of the third jury panel, counsel asked the panel whether there was "anything I've asked here during this round or during the previous rounds that you, just to be completely open and honest and transparent, that you need to comment on . . . anything that [other counsel] has said that you feel like you need to tell us about?" The foreman did not respond. The post-conviction court reasoned that although the foreman knew the deputies, his lack of disclosure was "insignificant, especially since these disclosures could only have been made in response to questions that required [the foreman] to recall questions asked during two hours of prior examination of other jurors in order to disclose that he had passing knowledge of two [deputies]." The record supports the post-conviction court's determination that the foreman's silence did not constitute a willful concealment or false disclosure. Furthermore, the record reflects that counsel never asked the foreman about his previous employment. Thus, the Petitioner has failed to establish a presumption of bias.

The record also supports the post-conviction court's determination that the jury foreman had no actual bias. This court has recognized that the single fact that a juror worked in law enforcement does not lead to the conclusion that the juror was biased or prejudiced. *See State v. Pender*, 687 S.W.2d 714, 718 (Tenn. Crim. App. 1984); *see also State v. Taylor*, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983) ("We hold that the alleged relationship of jurors to people connected with law enforcement, even if true, does not give rise to an inherently prejudicial situation in and of itself."). Here, the foreman testified that he last worked in law enforcement approximately fifteen years before the trial and that his prior law enforcement experience did not affect his deliberations or bolster the credibility of the deputies who testified. In fact, the foreman testified that he had concerns about the investigation and was critical of the sheriff's department. During voir dire, the foreman responded affirmatively when asked directly if he were "willing to listen and consider [the evidence], decide for [him]self?" *See Smith*, 357 S.W.3d at 348 (No actual bias existed when the juror told the judge that there was no reason he could not give the defendant a fair trial). Accordingly, the post-conviction court did not err by concluding that the Petitioner failed to establish that the jury foreman was either presumptively or actually biased or that the Petitioner was deprived of a fair and impartial jury. The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE