IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 29, 2002

**STATE OF TENNESSEE v. SCOTT BENN**

**Appeal from the Criminal Court for Hamilton County**
**No. 231366     Stephen M. Bevil, Judge**

**No. E2001-01958-CCA-R3-CD**
**March 10, 2003**

The defendant, Scott Benn, who was originally charged with felony murder and aggravated child abuse, was convicted of one count of aggravated child abuse. The trial court imposed a sentence of twenty-five years. In this appeal, the defendant asserts (1) that the trial court erred by failing to instruct the jury on the lesser included offenses of felony murder and aggravated child abuse; (2) that the trial court erred by admitting certain evidence; and (3) that the sentence is excessive. Although the trial court erred by failing to instruct on the lesser included offenses, the error can be classified as harmless beyond a reasonable doubt. The judgment is, therefore, affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Donna Robinson Miller (on appeal) and Christian J. Coder (at trial), Assistant District Public Defenders, for the appellant, Scott Benn.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; and Christopher David Poole and Barry A. Steelman, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On September 23, 1999, Sherry Benn, the wife of the defendant, arrived at the emergency room of T.C. Thompson Children's Hospital in Hamilton County. She was carrying the victim, her seven-month-old daughter, Alana Benn. Ms. Benn reported that the victim could not breathe and asked for help. According to Dr. Donna Lett, the pediatrician on duty, the victim had turned blue and appeared to have been dead for some time. After administering life saving measures for approximately thirty minutes, Dr. Lett declared the victim dead.

At trial, Dr. Lett testified that the victim had bruises to both the right and left sides of her head and a large, raised bruise in the center of her forehead. X-rays revealed that the victim had a

number of fractured ribs. Some of the rib fractures were more than one week old and others were as little as twenty-four hours old. In addition, the femur of each leg and the tibia of one leg were broken. It was Dr. Lett's opinion that the injuries to the victim's legs were less than twenty-four hours old. She made a diagnosis of child abuse, explaining that the victim, who was not yet walking or crawling, could not have received the injuries any other way. Dr. Lett believed that the injuries could not have been caused by a fall of less than eight feet.

Further examination of the victim revealed retinal hemorrhaging, which is indicative of Shaken Baby Syndrome. According to Dr. Lett, Shaken Baby Syndrome occurs when a baby is shaken so violently that the brain collides with the inside of the skull, causing severe injury and often death. She stated that while great force would not be required to inflict the type of injuries suffered by the victim, a large armspan would be. It was her opinion that a five-year-old child could not have inflicted the injuries.

Isaac Morton, the defendant's eleven-year-old stepson, testified that the defendant was alone in his bedroom with the victim for most of the day on the date she died. He stated that the defendant cared for him and his siblings, including the victim, while their mother worked. The boy recalled that he heard the victim crying after his mother left but he did not suspect that someone was hurting her. He remembered hearing the defendant repeat to the victim, "Why you crying? Why you crying like that?" According to Morton, the victim stopped crying after approximately one-half hour. He did not hear her again that night. Morton testified that the defendant left, taking the family's only car, shortly after his mother returned from work. At that time, the victim was lying on the bed.

Morton remembered that his mother checked on the victim, discovered that she was not breathing, and asked, "Has anything been wrong with Alana?" Morton testified that he helped his mother dress the baby while they waited for the defendant to return with the car. Morton recalled that as soon as the defendant returned, he and his mother transported the victim to the emergency room. Morton testified that he had not seen anyone, including the defendant, hit, drop, or otherwise harm the victim that night. He described the defendant as a good stepfather, one who would not harm the children. Morton conceded, however, that on one occasion, when he was trying to break up a fight between the defendant and his mother, the defendant struck him in the face.

Sherry Benn, who had been married to the defendant for approximately eight years at the time of the victim's death, testified that the defendant was responsible for the care of their six children while she was at work. On the night of the offense, she worked until approximately 11:00 p.m. and had planned to do laundry when she got home. According to Ms. Benn, the defendant left in their car shortly after her return, as was his custom. As she began gathering clothes to wash, she leaned over to kiss the victim and noticed that she was not breathing. When the defendant returned with the car, she left immediately for the emergency room. Ms. Benn testified that she had never seen the defendant use drugs and that he did not appear to be intoxicated on the night of the victim's death.

Ms. Benn testified that the victim was born prematurely and had stayed in the intensive care unit for some time after her birth. According to Ms. Benn, the victim needed oxygen at all times and

was on a heart monitor. She stated that her six-year-old daughter Amber, who liked to play mother, often tried to pick up the victim but was not permitted to do so.

Darrell Whitfield, a member of the crime scene investigation unit of the Chattanooga Police Department, was assigned to collect evidence at the defendant's residence. He stated that there was no evidence of any illegal drugs or drug paraphernalia.

Detective Bill Phillips of the Chattanooga Police Department, who questioned the defendant about the victim's death, recorded the defendant's statement. The defendant admitted striking the victim on the front and sides of her head when she would not stop crying. When he realized that the victim had stopped breathing, the defendant administered rapid chest compressions, hoping her heartbeat would "catch." His efforts were unsuccessful, however, and he placed the victim on a pillow so that it would appear that she was sleeping. The defendant informed Detective Phillips that he had considered attempting to flee, but realized that he had nowhere to go. During the interview, he assured the detective that he was not trying to protect his wife or their other children by accepting responsibility for the incident.

Dr. Frank King, who performed the autopsy of the victim, documented a number of injuries consistent with child abuse, including blunt trauma to the victim's head, retinal hemorrhaging, and bleeding in the brain. It was his opinion that the injuries could not have been caused by accidental means. He stated that dramatic force would be required to cause the degree of retinal hemorrhaging present in the victim. Dr. King testified that bruising to the victim's face and head was caused by blows administered less than twenty-four hours prior to her death. It was his view that death was caused by a combination of blunt trauma, brain swelling, brain hemorrhaging, and retinal hemorrhaging.

Dr. King found that the victim had suffered fractures of ribs five through nine on her left side, with the fracture in rib nine being the most recent. He described the injuries to the victim's ribs as the result of "squeezing." It was his opinion that a child could not have been powerful enough to cause the injuries. Dr. King also found "a complete transverse fracture of the distal right femur and . . . a complete transverse fracture of the distal left femur," explaining that a complete transverse fracture goes "through the entire thickness of the bone." The hemorrhaging at the leg fractures indicated that the injuries occurred at about the same time, less than twenty-four hours before the victim's death. Dr. King described the injuries as extremely painful. It was his opinion that the victim's host of medical problems, which were related to her premature birth, did not cause her death.

At trial, the defendant testified that it was his responsibility to care for the children on the night of the victim's death. He claimed that he left only once, when he went to pick up dinner. The defendant contended that after dinner, the older children went into the living room to listen to music while he stayed in the bedroom with the victim. He stated that after he went into the bathroom to smoke crack cocaine, his oldest daughter knocked on the door, informing him that something was wrong with the baby. The defendant testified that he told her to go away and later, when he heard the victim crying, he left the bathroom to check on her. He contended that the victim was alive,

lying on the floor next to an oxygen tank when he entered the bedroom. He claimed that he gave the victim a bottle and she went to sleep. The defendant insisted that the victim was alive when he placed her on a pillow.

The defendant recanted the statement he made to Detective Phillips, claiming that he had confessed his guilt only to protect his oldest daughter, Amber. He stated that Amber had an anger management problem and had injured her younger brother on at least one prior occasion. The defendant claimed that Amber, who had been warned not to carry the victim, had dropped her before. He explained that he chose to be truthful when he learned that because of her age, Amber could not receive a harsh punishment for harming the victim. He claimed that he fabricated the statement he made to police, utilizing the injuries he had observed on the victim at the hospital as a guide.

**I**

The defendant first asserts that the trial court erred by failing to instruct the jury on reckless homicide and criminally negligent homicide as lesser included offenses of felony murder. The state concedes that reckless homicide and criminally negligent homicide are lesser included offenses of felony murder, but argues that the issue is moot because the defendant was acquitted of felony murder. The defendant also asserts that the trial court erred by failing to instruct the jury on reckless aggravated assault as a lesser included offense of aggravated child abuse. The issue was not presented in the motion for new trial.

Generally, the failure to present an issue in a motion for new trial results in waiver. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides that for appeals "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." See also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). Whether properly assigned or not, however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984).

Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous, but especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. See State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

(a) The record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused [must not have waived] the issue for tactical reasons; and

(e) consideration of the error must be "necessary to do substantial justice.

Id. at 641-42. Our supreme court characterized the Adkisson test as a "clear and meaningful standard" and emphasized that each of the five factors must be present before an error qualifies as plain error. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000). The right to jury instructions on lesser included offenses is based, in large measure, upon the constitutional right to trial by jury. See Tenn. Const. art. I, § 6; State v. Bowles, 52 S.W.3d 69, 77 (Tenn. 2001). The erroneous failure to charge the appropriate lesser included offenses will qualify as "plain" when the error cannot be classified as harmless beyond a reasonable doubt. Cf. State v. Ben Mills, No. W1999-01175-CCA-R3-CD (Tenn. Crim. App., at Jackson, May 3, 2002) (erroneous failure to provide jury instructions on lesser included offenses did not qualify as plain error where the error could be classified as harmless beyond a reasonable doubt).

The question of whether a given offense should be submitted to the jury as a lesser included offense is a mixed question of law and fact. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. Id.; see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. In addition, the trial court has a statutory duty to instruct the jury on all applicable lesser included offenses. See Tenn. Code Ann. § 40-18-110 (1997).[1]

In Burns, our supreme court adopted a modified version of the Model Penal Code in order to determine what constitutes a lesser included offense:

An offense is a lesser included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or
(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
(1) a different mental state indicating a lesser kind of culpability; and/or
(2) a less serious harm or risk of harm to the same person, property or public interest, or
(c) it consists of

---

[1] The legislature has amended section 40-18-110 to provide that for all trials conducted on or after January 1, 2002, the failure of the defendant to request, in writing, an instruction on any lesser included offense shall constitute a waiver of that instruction.

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b).

6 S.W.3d at 466-67. Utilizing this analysis, reckless homicide and criminally negligent homicide are lesser included offenses of felony murder. See id.; see also State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001)(stating that reckless homicide is a lesser included offense of first degree murder); State v. Sims, 45 S.W.3d 1, 21 (Tenn. 2001). In addition, reckless aggravated assault would be a lesser included offense of aggravated child abuse. See State v. Honeycutt, 54 S.W.3d 762, 771 (Tenn. 2001) (holding that reckless aggravated assault is a lesser included offense of aggravated child abuse).

The trial court has a duty to instruct the jury as to a lesser included offense if: (1) reasonable minds could accept the offense as lesser included; and (2) the evidence is legally sufficient to support a conviction for the lesser included offense. Burns, 6 S.W.3d at 469; see also State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999). This duty applies whether or not a defendant requests such an instruction. Tenn. Code Ann. § 40- 18-110(c) (1997). Moreover, our supreme court has held that trial courts "must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. The evidence, not the parties, controls whether an instruction is required." State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002). Our high court observed that the "jury is not required to believe any evidence offered by the State," and held that the authority of the jury to convict on a lesser-included offense may not be taken away, even when proof supporting the element distinguishing the greater offense from the lesser offense is uncontroverted. Id. at 189.

In his initial statement to police, the defendant admitted that he struck the victim several times in an effort to stop her from crying, but claimed that he never intended to harm the victim and did not realize that the blows he administered could result in her death. Shortly after the crime, he told police that the victim's death was the result of his recklessness or negligence rather than his willful intent to cause injury. In our view, this evidence warranted instructions on reckless homicide and criminally negligent homicide as lesser included offenses of felony murder. In addition, the evidence justified an instruction on reckless aggravated assault as a lesser included offense of aggravated child abuse.

Because the proof offered at trial justified an instruction on reckless homicide, criminally negligent homicide, and reckless aggravated assault, the trial court erred by failing to instruct the jury as to those offenses. Our next inquiry is whether the error was harmless. In Allen, our high court concluded that when the trial court improperly fails to instruct on a lesser included offense, the harmless error inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial. Id. at 191. In making this

-6-

determination, "a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Id.

In this instance, the defendant was acquitted of the charge of felony murder but argues that he would not have been convicted of aggravated child abuse if the jury had been instructed on all of the lesser included offenses of felony murder. The defendant cites no authority for this argument. The failure to provide citation to authorities generally results in a waiver of the issue. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). In this instance, the claim is simply too speculative. While the trial court had the duty to charge the lesser included offenses of felony murder, that error was harmless beyond any reasonable doubt because no conviction at all resulted from that count in the indictment. An acquittal on the greater charge serves as an acquittal on all lesser included offenses. See generally Ray v. State, 563 S.W.2d 218, 220 (Tenn. Crim. App. 1977). An instruction on the lesser included offenses of a count which resulted in an acquittal would not likely have affected the outcome of the trial with regard to the remaining counts in the indictment.

As to the second count, aggravated child abuse, the trial court provided instructions on only one lesser included offense, child abuse. To convict a defendant of aggravated child abuse, the state must prove that the defendant "knowingly, other than by accidental means," treated the victim "in such a manner as to inflict injury" and that the act of abuse resulted in "serious bodily injury to the child." Tenn. Code Ann. §§ 39-15-401(a), -402(a)(1). A conviction for child abuse requires a showing that the defendant "knowingly, other than by accidental means," treated the victim "in such a manner as to inflict injury." Tenn. Code Ann. § 39-15-401(a). Both offenses require a "knowing" state of mind and differ only in that aggravated child abuse requires a showing that the abuse caused serious bodily injury rather than injury. Reckless aggravated assault, as the name implies, requires only a "reckless" mental state.

In Honeycutt, our supreme court ruled that the failure to instruct on reckless aggravated assault as a lesser included offense of aggravated child abuse was error. It did not engage in harmless error analysis with regard to the trial court's failure to provide the instruction, however, having determined that other error in that case warranted reversal. In State v. Cornelius Michael Hyde, No. E2001-02708-CCA-RMCD (Tenn. Crim. App., at Knoxville, Jan. 15, 2002), our supreme court remanded the case to this court to specifically consider the impact of its holding in Honeycutt that reckless aggravated assault is a lesser included offense of aggravated child abuse. In Hyde, the defendant was charged with aggravated child abuse of his girlfriend's son, who exhibited bruises "all over his body." Id. The defendant admitted "whipping" the victim with a belt and conceded that the punishment could have caused some bruising, but denied causing bruises to the victim's face, head, groin, or arms. The trial court instructed the jury as to child abuse, but failed to provide an instruction on reckless aggravated assault as a lesser included offense of aggravated child abuse. On remand, this court held that the failure to provide an instruction on reckless aggravated assault was error and that the error could not be classified as harmless beyond a reasonable doubt.

In our view, this case is distinguishable from Hyde. First, the injuries that the victim suffered in this case were extreme, as they resulted in her death. In Hyde, the victim's injuries, while painful, consisted only of bruising to various parts of his body. Moreover, the record demonstrates that the defendant received a more favorable verdict than the defendant in Hyde. Hyde was convicted of aggravated child abuse, the highest crime with which he was charged. Here, the defendant was charged with felony murder for the death of his daughter, but was acquitted of that offense despite the compelling proof offered by the state. Had the jury found the defendant guilty of felony murder, the evidence would have been legally sufficient to support that verdict.

As stated by Chief Justice Rehnquist in his concurring opinion in Sullivan v. Louisiana, 508 U.S. 275, 283 (1993), "[a]ny time an appellate court conducts harmless-error review it necessarily engages in some speculation as to the jury's decision making process; for in the end no judge can know for certain what factors led to the jury's verdict." The real question when there is a constitutional violation is whether there is "a reasonable probability" that error might have contributed to the conviction. Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963). Because the evidence of aggravated child abuse was so substantial in this case, it is our view that no "reasonable probability" exists that the jury would have convicted the defendant of reckless aggravated assault. Therefore, the trial court's failure to instruct the jury as to the lesser included offense of reckless aggravated assault would be harmless beyond a reasonable doubt. See Allen, 69 S.W.3d at 191; cf. State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998) (the failure to instruct on lesser included offenses may be considered harmless beyond a reasonable doubt when the jury "necessarily" rejects the lesser included offense by declining to convict on an intermediate offense).

Because the trial court's failure to instruct the jury on these lesser included offenses was harmless beyond a reasonable doubt, no substantial rights of the defendant were affected. Thus, the error does not qualify as "plain." See Adkisson, 899 S.W.2d 641-42.

**II**

The defendant next contends that the trial court erred by permitting evidence that he had struck Isaac Morton and that the victim had suffered broken ribs more than a week before her death in violation of Tennessee Rule of Evidence 404(b). The state submits that evidence of the rib fractures was properly admitted to rebut the defendant's claim that the victim was injured accidently and that proof that the defendant had previously struck Isaac Morton was properly admitted to rebut the defendant's claim that he was a loving father who would not strike any of his children.

Rule 404 of the Tennessee Rules of Evidence provides in pertinent part as follows:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing inquiry on cross-examination about specific instances of conduct are:
(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the  ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).  A fourth prerequisite to admissibility is that the trial court find by clear and convincing evidence that the defendant committed the other crimes or bad acts.  State v. DuBose, 953 S.W.2d 649, 654 (Tenn. 1997).  Rule 404 was patterned in great measure on State v. Parton, 694 S.W.2d 299 (Tenn. 1985), wherein our supreme court ruled that evidence of other crimes is generally inadmissible.  The terms of this rule establish that character evidence cannot be used to prove that a person has a propensity to commit a crime.  Tenn. R. Evid. 404(b); Adkisson, 899 S.W.2d at 646. Most authorities suggest that trial courts take a "restrictive approach of 404(b) . . . because 'other act' evidence carries a significant potential for unfairly influencing a jury."  Neil P. Cohen et al., Tennessee Law of Evidence § 4.04[8][e] (4th ed. 2000).  That perhaps best explains the traditional posture of the courts that any testimony of prior bad acts by a defendant is not usually admissible when used as substantive evidence of guilt of the crime on trial.  Parton, 694 S.W.2d at 302-03.  In those instances where the prior conduct or acts are similar to the crimes on trial, the potential for such a result increases.  State v. Bordis, 905 S.W.2d 214, 232 (Tenn. Crim. App. 1995).

Exceptions to the rule may occur when the other crime is relevant to an issue other than the accused's character such as identity, motive, common scheme or plan, intent, or absence of mistake. If, however, unfair prejudice outweighs the probative value of the other crime evidence, courts are required to exclude the evidence.  State v. Howell, 868 S.W.2d 238, 254 (Tenn. 1993); see also State v. Zagorski, 701 S.W.2d 808 (Tenn. 1985); State v. Taylor, 669 S.W.2d 694 (Tenn. Crim. App. 1983).  When the trial court substantially complies with the requirements of Rule 404(b), this court will review the trial court's determination for an abuse of discretion.  DuBose, 953 S.W.2d at 652.

Here, Drs. Lett and King testified that upon examining the victim, they discovered that the victim had suffered fractures to several of her ribs and that all but one of the fractures had occurred more than twenty-four hours but less than one week prior to her death.  In our view, this evidence is probative to show that the injuries to the victim were not the result of an accident, an essential element of aggravated child abuse.  See Tenn. Code Ann. § 39-15-402(a)(1).  Further, proving the absence of mistake or accident is one of the purposes for which prior bad act evidence may be admitted.  See Tenn. R. Evid. 404(b); Howell, 868 S.W.2d at 254.  Finally, the probative value of this evidence outweighed the danger of unfair prejudice to the defendant.  The evidence was properly admitted.

During the cross-examination of Isaac Morton, the defense elicited testimony that the defendant was a good father whose paramount objective was the care and protection of his children. The state sought to introduce evidence that the defendant had struck Isaac Morton in the face to rebut his claim that he would not do anything to harm his children.  When an accused places his character at issue, the prosecution may then offer evidence to rebut the defendant's claims.  See Tenn. R. Evid.

404(a)(1).  Here, the defendant placed his good character at issue, opening the door for the prosecution to rebut the same.  See State v. West, 844 S.W.2d 144, 149 (Tenn. 1992); State v. Phipps, 883 S.W.2d 138, 152-53 (Tenn. Crim. App. 1994).  Further, the probative value of this evidence was not outweighed by the danger of unfair prejudice.  See Tenn. R. Evid. 403.  Under these circumstances, the trial court did not abuse its discretion by admitting this evidence.

### III

Finally, the defendant asserts that his sentence is excessive, complaining that the trial court erred by the application of enhancement factors (4), (5), (6), and (10).  See Tenn. Code Ann. § 40-35-114 (1997).[2]  When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994).  "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls."  State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).  The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint within the range if there are no enhancement or mitigating factors.  Tenn. Code Ann. § 40-35-210(c).  If there are enhancement factors but no mitigating factors, the trial court shall set the sentence at or above the midpoint.  Tenn. Code Ann. § 40-35-210(d).  If there are mitigating factors but no enhancement factors, the trial court shall set the sentence at or below the midpoint.  Id.  A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence.  Tenn. Code Ann. § 40-35-210(e).  The sentence must then be reduced within the range by any weight assigned to the mitigating factors present.  Id.

In arriving at a sentence of twenty-five years, the maximum within the range, the trial court applied the following enhancement factors:

---

[2]Effective July 4, 2002, the legislature has amended Tenn. Code Ann. § 40-35-114 by renumbering original enhancement factors (1) thru (20) and including as enhancement factor (1) that "the offense was an act of terrorism, or was related to an act of terrorism."

(1) that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(4) that the victim was particularly vulnerable because of age;

(5) that the defendant treated the victim with exceptional cruelty during the commission of the offense;

(6) that the personal injuries inflicted upon the victim were particularly great;

(10) that the defendant had no hesitation about committing a crime when the risk to human life was high;

(15) that the defendant abused a position of private trust in a manner that significantly facilitated the commission of the offense; and

(18) that the victim, under § 39-15-402, suffered permanent impairment of either physical or mental functions as a result of the abuse inflicted.

See Tenn. Code Ann. § 40-35-114(1), (4), (5), (6), (10), (15), and (18) (1997). The trial court found the following mitigating factors applicable:

(11) The defendant, although guilty of a crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct;

(13) the defendant had the support of his family;

(13) the defendant had no prior felony convictions;

(13) the defendant is known to be kindhearted, very respectful, and well mannered; and

(13) the defendant had not had any disciplinary problems while incarcerated.

See Tenn. Code Ann. § 40-35-113(11), (13) ["any other factor consistent with the purposes of this chapter"].

The defendant asserts that the trial court erred by applying enhancement factor (4), that the victim was particularly vulnerable because of age, because proof that the victim is less than six years old is an essential element of aggravated child abuse. The state submits that enhancement factor (4) is applicable because the victim, only seven months old at the time of the offense, was unable to summon help or resist the attack because of her young age.

Our supreme court has concluded that enhancement factor (4) "relates more to the natural physical and mental limitations of the victim than merely to the victim's age." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). Thus, the high court found that factor (4) could be used in an aggravated rape case of a child under the age of thirteen, even though the age of the child is an essential element of the crime, "if the circumstances show that the victim, because of his age or physical or mental condition, was in fact 'particularly vulnerable,' i.e., incapable of resisting, summoning help, or testifying against the perpetrator." Id. Here, the victim's very young age and physical condition rendered her incapable of resisting the attack or summoning help. The medical

issues associated with her premature birth suggest that she was completely dependent upon others, making her particularly vulnerable to abuse. In consequence, enhancement factor (4) is applicable.

The defendant next contends that the application of enhancement factor (5), that the defendant treated the victim with exceptional cruelty, is not supported by the record. Application of this factor requires a finding of cruelty over and above that inherently attendant to the crime for which the defendant is convicted. State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995). In other words, such evidence must "denote[] the infliction of pain or suffering for its own sake or from the gratification derived therefrom, and not merely pain or suffering inflicted as the means of accomplishing the crime charged." State v. Kelly Haynes, No. W1999-01485-CCA-R3-CD (Tenn. Crim. App., at Jackson, Mar. 14, 2000). Enhancement factor (5) has typically been applied in situations where the victim was tortured or abused. See State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991). This court has upheld the application of this factor based on proof of extensive physical abuse or torture, see State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995), as well as proof of psychological abuse or torture, see State v. Thomas Lebron Mills and Carl Franklin Mills, No. 936 (Tenn. Crim. App., at Knoxville, Dec. 19, 1985) (holding that acts of mental cruelty, by themselves, can be as vicious and scarring as acts of physical cruelty).

The record establishes that the victim suffered both blunt trauma to her head and face, as evidenced by the bruising, and a shaking injury to her brain, which combined to cause her death. In addition, she had suffered several broken ribs in the hours and days leading up to her death. She also suffered severely broken bones in both her legs within twenty-four hours of her death. Both Drs. Lett and King testified that these injuries would have caused excruciating pain. In our view, the trial court did not err by applying enhancement factor (5).

The defendant also complains that enhancement factor (6), that the injuries to the victim were particularly great, should not have been applied because serious bodily injury is an essential element of aggravated child abuse. The state concedes that this factor is inapplicable. Tennessee Code Annotated section 40-35-114 specifically prohibits using factors that are elements of the offense to enhance a defendant's sentence. Our supreme court has held that "proof of serious bodily injury will always constitute proof of particularly great injury." State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994). Thus, because serious bodily injury is an element of aggravated child abuse as charged in the indictment in this case, it was error for the trial court to apply enhancement factor (6) to the defendant's sentence.

Finally, the defendant argues that the trial court erred by finding enhancement factor (10), that the defendant had no hesitation about committing a crime where the risk to human life was high, applicable. Enhancement factor (10) is properly applied only when a defendant exhibits "a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted." Id. at 603. Here, the proof adduced at trial established that the defendant struck the victim repeatedly in the head with his fist, causing swelling and bleeding in her brain. The defendant was aware that extra care should have been taken with the victim because of the medical problems associated with her premature birth. Finally, the damages administered to the victim were so

extreme as to cause her death. Under these circumstances, it is our view that the application of enhancement factor (10) was not error.

The defendant also contends that the trial court erred by refusing to find in mitigation that he was remorseful and that he did not contemplate that his conduct would cause or threaten serious bodily injury. The trial court refused to apply these factors, observing that an award of credit for the grief the defendant suffered "would seem to be like a person setting fire to his house and burning it to the ground and then claiming as a mitigating factor that he's homeless." That is a fair assessment. Moreover, the defendant's assertion that he did not contemplate that striking an infant in the head with his fist would cause serious bodily injury is not credible. In our view, the trial court did not err by rejecting these mitigating factors.

In summary, the trial court improperly applied enhancement factor (6) and properly applied enhancement factors (1), (4), (5), (10), (15), and (18). The trial court determined that the enhancement factors outweighed the mitigating factors and imposed a sentence of twenty-five years, the maximum within the range. In our view, the application of the six enhancement factors would warrant the imposition of the maximum sentence.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE