IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 26, 2005

## STATE OF TENNESSEE v. TYLER STOUT SMITH

**Direct Appeal from the Criminal Court for Putnam County**
**No. 03-0356     Lillie Ann Sells, Judge**

---

**No. M2004-03048-CCA-R3-CD - Filed February 16, 2006**

---

Following a jury trial, Defendant, Tyler Stout Smith, was convicted of vehicular homicide by recklessness. Defendant was ordered to pay a fine of ten thousand ($10,000) dollars and was sentenced to four (4) years in the Department of Correction. On appeal, Defendant argues that (1) the evidence presented was insufficient to establish the element of recklessness beyond a reasonable doubt; (2) Defendant's due process rights were violated when the trial court did not allow him to present evidence that the victim was influenced by an intoxicant which may have influenced her ability to avoid the collision; and (3) the trial court improperly increased the Defendant's sentence from three years to four years. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Edwin G. Sadler, attorney for appellant, Tyler Stout Smith.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; William Edward Gibson, District Attorney General; and David A. Patterson, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

On November 25, 2002, at approximately 7:00 a.m., Lori Taylor, a Jackson County resident, was taking her children to daycare and commuting to work in Putnam County via Highway 290, commonly known as Gainesboro Grade Road. Ms. Taylor was traveling on Highway 56 when she initially saw Defendant sitting at a stop sign on Flynn's Creek Road. As she moved into the turn lane to turn left east bound onto Gainesboro Grade Road, Ms. Taylor immediately noticed Defendant's truck behind her SUV. She stated that "[Defendant] came upon me really fast and I thought he was going to ram me." Ms. Taylor said that after this first encounter, she "kind of watched [Defendant's] reaction and what he was doing from that point on."

Defendant turned left onto Gainesboro Grade Road behind Ms. Taylor. She turned to look at Defendant and saw that when he turned left, he continued left and swerved into the westbound lane. There was no oncoming traffic present at the time. Defendant then drove his truck back into the lane behind Ms. Taylor, and the two cars proceeded eastbound on Gainesboro Grade. Ms. Taylor eventually encountered another truck traveling eastbound at a much slower rate of speed which forced both she and Defendant to slow their own cars. Defendant attempted to pass both Ms. Taylor and the truck, but oncoming traffic prohibited him from passing. She could not remember if the attempt occurred in an area that permitted passing, but she recalled that she moved her SUV into the emergency lane because she thought Defendant was going to collide with the oncoming traffic.

When they reached the intersection of County Farm Road, which runs north and south from Gainesboro Grade Road, Defendant moved into the emergency lane to the right of Ms. Taylor and proceeded through the intersection in this manner. She was then prompted to speed up when she noticed that the front end of Defendant's truck was even with her car at the point where her two-year old daughter was riding in the backseat. As they continued east, Defendant again moved into the westbound lane and tried to pass Ms. Taylor despite the road having a double yellow line prohibiting passing. Ms. Taylor made the decision that she was going to call 9-1-1 because she felt that Defendant was "not going to make it" once they entered into four lanes of traffic. She used her cell phone to dial 9-1-1 while continuing to observe Defendant in her rearview mirror. Ms. Taylor recalled that as she dialed 9-1-1, she saw a red car and then a white car in the westbound lane, and then Defendant crossed over the double line again into the oncoming traffic. When his truck crossed into the westbound lane, Defendant collided with a red Saturn convertible, killing the driver, Tammy D. Goodwin.

Jennifer Salinge, an employee of the Tennessee Tech University Police Department, also testified as to her observations on the day of the accident. When the accident occurred, Ms. Salinge was driving immediately behind Defendant on her way to take her children to school and herself to work. She stated that she was concerned with Defendant's driving that morning because she had witnessed Defendant trying to pass Ms. Taylor both in the emergency lane and the westbound lane of traffic in areas where there were double yellow lines. Defendant's erratic driving prompted Ms. Salinge to slow the speed of her own car in order to remain a safe distance from his truck.

Ms. Salinge clearly saw the wreck occur. Approximately fifty to one hundred yards from where Gainesville Grade Road becomes a four-lane highway, she saw Defendant cross over double yellow lines into oncoming traffic and collide with the victim's car. Ms. Salinge stated that when Defendant's truck collided with that of the victim's, over half of his truck was in the oncoming lane of traffic. She explained that the driver's side of Defendant's truck was completely in the westbound lane and hit the oncoming car, driving up and over the top of the victim's car, and flipping Defendant's truck. Ms. Salinge swerved to avoid the wreck, then parked her car and used her work radio to call in the accident to the Cookeville Police Department.

Pam Holt testified that she was driving in the westbound lane immediately behind the victim when the two cars collided. Based upon her own speed, Ms. Holt did not believe the victim was

speeding. She testified that she followed the victim's car into a curve in the road and then saw Defendant's truck move into the westbound lane of traffic. Defendant's truck drove over the top of the victim's car, the truck went airborne, and the victim's car spun out of control coming to rest at a stop sign. Ms. Holt swerved and avoided being hit by either car. When Ms. Holt stopped her car, she called 9-1-1, but the dispatcher informed her that they had already been contacted about the wreck.

Sgt. Mike Lee, with the Cookeville Police Department Traffic Enforcement Section, testified that he investigated the accident involving Defendant and the victim on November 25, 2002. Upon his arrival, Sgt. Lee took photographs of the scene and observed the condition of the victim and Defendant. He said that there was no indication from the scene that the victim's vehicle had any fault in the incident. On cross-examination, he stated that in his opinion, Defendant's vehicle crossed over into the victim's lane of traffic, hitting the victim's car and killing her.

Trooper David Roark with the Tennessee Highway Patrol Critical Incident Response Team, testified as an expert witness in accident reconstruction. Based on measurements, photographs, and diagrams constructed of the accident site, Trooper Roark testified that the accident was an opposite direction collision, meaning less that fifty percent frontal impact on both cars. He explained that the evidence from the scene indicated Defendant's truck crossed over into the victim's lane of traffic prior to colliding with the victim's car. Trooper Roark stated that, in his opinion, the victim was not at fault in any way.

Officer Randy Brown, an officer with the Cookeville Police Department Traffic Enforcement Section, testified that he was the primary officer assigned to collect evidence and investigate the scene of the accident on November 25, 2002. He arrived at the scene at 9:01 a.m.. He explained that seven-thirty in the morning is the busiest time of day for the area where the accident occurred because it is during the morning school hours when people are taking their children to school and commuting to work. Officer Brown verified that the accident occurred in an area with double yellow lines. At the scene, Officer Brown identified Defendant as the driver of the truck, but the victim had been removed prior to his arrival. He took statements from Defendant and the other witnesses. The statements taken from Ms. Taylor, Ms. Salinge, and Ms. Holt were consistent with their testimony at trial. Defendant did not hesitate to cooperate with Officer Brown on any matter. Defendant told Officer Brown that he could not remember what had happened. He said that he was coming into town on Gainesboro Grade Road and he looked down to change the radio station and must have crossed the center line and struck the oncoming vehicle.

Defendant was given every opportunity to discuss what happened with Officer Brown. He did not mention anyone putting their brakes on or the need to avoid the car in front of him. Defendant admitted to Officer Brown they he had taken a trip to Tunica, Mississippi, over the weekend to celebrate a friend's twenty-first birthday. He told Officer Brown that during the course of the weekend he used Oxycodone, Xanax, and about a quarter gram of cocaine. Defendant also admitted to drinking beer while on the trip. As is customary in accidents involving fatalities, Defendant submitted to a blood and urine test. The blood test was negative for any type of drugs or

alcohol. The urine test however, was positive for Cocaine, Ecgonine methyl ester--a metabolite of Cocaine, Oxycodone, and Dihydrocodeinone. The urine test also showed traces of a cough suppressant and antihistamine. Defendant told Officer Brown that he left Tunica at approximately 2:00 p.m. on Sunday afternoon and arrived home in Jackson County at around 10:00 p.m. Sunday night. He said that he got up about 6:20 a.m. on Monday, the day of the accident, and got ready to come into town. Officer Brown said the weather was clear and dry on the day of the accident. He also said that during questioning the morning of the accident, Defendant did not appear to be under the influence of drugs or alcohol. Officer Brown also verified that the victim's death certificate identified the cause of death as multiple trauma from a motor vehicle accident.

Bonnie Smith, the victim's mother, testified that the victim was living with her on Gainesboro Grade at the time of the accident. Ms. Smith owned the red Saturn convertible that the victim was driving when she was killed. She stated that the victim had taken her daughter, Amanda, to school and her other child, a son, had stayed at home with Ms. Smith.

Defendant testified that on the weekend preceding the accident, he went to Tunica with some friends to celebrate his best friend's twenty-first birthday. He said that he planned on drinking and gambling, but he had not intended on using drugs, nor did he take any drugs to Tunica with him. Defendant acquired the drugs that he used from someone he met in Tunica. He said the last time he recalled using drugs was around 3:00 p.m. on Saturday, November 23, 2002. After partying Friday and Saturday night, Defendant went to bed around 2:30-3:00 a.m. Sunday morning and slept for about nine hours.

Defendant left Tunica around 1:00 p.m. on Sunday, November 24, 2002, and after driving a girlfriend home, met his parents around 10:00 p.m. at a restaurant in Columbia, Tennessee. Defendant rode home with his mother in her car, and Defendant's father drove Defendant's truck home. Defendant testified that they arrived at their home around 12:30 a.m., Monday morning. At trial, both of Defendant's parents testified to his history of drug abuse and his prior experience in a drug rehabilitation center. They explained that they drove to Columbia to meet their son because they knew he would be tired and need help driving after such a long weekend. Both parents also conceded that they were worried, and they had concerns that Defendant may have relapsed and used drugs during his trip to Tunica.

On the morning of the accident, Monday, November 25, Defendant woke up around 6:00 a.m., ate breakfast, and left his parent's house around 7:00 a.m. to do community service work at the recycling center. Defendant said that the drugs he had used over the weekend had no actual bodily effect on his ability to drive Monday morning. He admitted that he pulled out to pass Ms. Taylor and the slow-moving truck, but denied any knowledge that he swerved when turning onto Gainesboro Grade from Hwy 56. He further denied any recollection of trying to pass Ms. Taylor in areas prohibiting passing, and he denied having attempted to pass in the right hand emergency lane. Defendant admitted that he never said Ms. Taylor put on her brakes immediately preceding the accident and that he did not believe she did. Defendant claimed that he was not driving recklessly on the day of the accident.

Dr. Opless Walker, Director of Pharmacy at the Cookeville Regional Medical Center, provided expert testimony that the drugs found in Defendant's urine did not affect his ability to drive the morning of the accident. Dr.Walker testified that he analyzed each of the drugs found in Defendant's urine according to the pharmacology, or behavior, known about the drug. He stated that in his opinion, on November 25, 2002, at 7:32 a.m., Defendant was not under the influence of an intoxicant. Dr. Walker explained that there was no evidence of drugs in Defendant's blood, and because blood dictates the actions of the human body, the drugs Defendant consumed could not have affected his actions the morning of the accident because there was no evidence of the drugs in Defendant's blood.

## I. Sufficiency of the Evidence

Defendant first argues that the evidence presented at trial was insufficient to establish the element of recklessness beyond a reasonable doubt. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *State v. Goodwin,* 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid,* 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass,* 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). In determining the sufficiency of the evidence, this Court does not re-weigh or reevaluate the evidence and may not substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978); *Liakas,* 199 Tenn. at 305, 286 S.W.2d at 859. This Court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Herrod,* 754 S.W.2d 627, 632 (Tenn. Crim. App. 1988). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Defendant was convicted of vehicular homicide by recklessness. "Vehicular homicide is the reckless killing of another by the operation of an automobile . . .[a]s the proximate result of conduct creating a substantial risk of death or serious bodily injury to a person." T.C.A. § 39-13-213(a)(1) (2003). "'Reckless' refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." T.C.A. § 39-11-106(a)(31) (2003). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." *Id.*

The evidence established that on November 25, 2002, at approximately 7:30 a.m., Defendant was driving his truck when it collided with a red Saturn convertible, killing the driver. Witnesses testified that in the minutes preceding the collision, Defendant was swerving erratically, driving in the emergency lane, and attempting to pass in the oncoming lane of traffic without regard for the double yellow line. There was testimony that one witness was so concerned prior to the collision that she pulled out her phone to call 9-1-1. The witnesses also testified that at the moment of the accident, Defendant crossed over a double yellow line into the victim's lane of traffic and ran over the top of her car before going airborne in his truck and landing upside down.

The investigation conducted by the Cookeville Police Department and the Tennessee Highway Patrol confirmed the witnesses' accounts of the accident. The investigation also established that the victim was in no way at fault for the accident, and that Defendant did cross into the victim's lane of traffic immediately preceding the collision. Defendant argues that he looked away from the road only to operate his car radio, and in that moment he drifted over the double yellow line and collided with the victim. He contends that operating a car radio does not rise to the level of recklessness contemplated by the vehicular homicide statute. The jury was free to accept Defendant's theory and his account of the events leading up to the accident. *See State v. Summerall*, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995). Likewise, the jury was free to fully accredit the theory presented by the State and disregard Defendant's assertions. *Id.* As evidenced by it's verdict, the jury chose to accredit the theory of the prosecution. We find the evidence sufficient to support the jury's determination. Defendant is not entitled to relief on this issue.

## II. Due Process Violation

Defendant next argues that his due process rights were violated because he was not allowed to present evidence that the victim may have been influenced by an intoxicant which hindered her ability to avoid the accident. The State filed a Motion in Limine to preclude Defendant from introducing evidence which revealed that the victim had controlled substances in her body at the time of the accident. The trial court granted the State's motion. Defendant argues that the granting of this motion violated his due process rights under the federal and state constitutions because he was unable to present a defense that might have negated the State's theory of recklessness.

In the record submitted on appeal, Defendant failed to include a transcript of the hearing on the Motion in Limine. The defendant has the obligation to ensure that the record on appeal is sufficient to allow meaningful review. *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993). Thus, the failure to include the transcript of the Motion in Limine hearing generally constitutes a waiver of the issue. *See* Tenn. R. App. P. 24(b); *Thompson v. State*, 958 S.W.2d. 156, 172 (Tenn. Crim. App. 1997). When no transcript is included in the record, this Court must presume that the ruling of the trial court is correct. *See Ballard,* 855 S.W.2d at 560-61; *State v. Taylor*, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983). Because the record on appeal does not contain a transcript of the Motion in Limine hearing, Defendant has waived this issue on appeal and therefore is not entitled to relief.

## III. Sentencing

Finally, Defendant asserts that the trial court erred in sentencing him to serve four years for his conviction of vehicular homicide by recklessness, a Class C felony. Defendant argues that he should have received the minimum sentence for a Range I, standard offender because there were no enhancement factors applicable to his offense. Specifically, Defendant argues that the trial court improperly found that his previous driving record contained offenses constituting a criminal history. He asserts that speeding tickets, and tickets for improper turns do not constitute criminal behavior.

When a defendant challenges the length, range, or manner of service of his sentence, this Court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and the trial court's findings of fact are adequately supported by the record, the presumption is applicable and we may not modify the sentence even if we would have preferred a different result. *See State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. *See State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the defendant has the burden of showing that the sentence imposed by the trial court is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments.

We find that the trial court properly considered the sentencing principles, therefore our review is *de novo* with a presumption of correctness. As stated, Defendant was convicted of the Class C felony of vehicular homicide by recklessness and sentenced as a Range I, standard offender. Pursuant to Tennessee Code Annotated section 40-35-112(a)(3) (2003), Defendant may be sentenced to serve "not less than three (3) nor more than six (6) years" for this conviction. The presumptive sentence for a Class C felony is three (3) years provided there are no enhancement or mitigating factors. *See* T.C.A. § 40-35-210(c)(1) (2003). If the trial court finds that there are enhancement factors, and mitigating factors, "[t]he sentence length within the range should be adjusted, as appropriate." T.C.A. § 40-35-210(c)(2).

The trial court applied only enhancement factor number two under Tennessee Code Annotated section 40-35-114 (2003). Enhancement factor number two is concerned with whether the defendant has a "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(2). Defendant had four prior speeding tickets, one ticket for improper turn, he was ordered to attend a defensive driving

course in January 2002, and he was on pretrial diversion for another offense at the time the accident occurred. Defendant also admitted to the use of narcotics on the weekend immediately preceding the Monday morning accident. Not surprisingly, the trial court found it important that after the accident on November 25, 2002, Defendant received two more tickets, and although they were both dismissed after a trial, he received one such ticket the day after a night of drinking. The court stated, "I do consider that criminal behavior and . . . [t]hat kind of driving history in this particular kind of case, I do give it a lot of weight, quite a bit of weight." The trial court did find Defendant's age to be a mitigating factor, but did not give it much weight in light of his extensive driving history.

We find that it was within the trial court's discretion to consider Defendant's driving history as criminal behavior in determining the length of his sentence. We agree with this determination, and we will not overturn the trial court's decision. It is our conclusion that a four year sentence of confinement in this case is consistent with the sentencing principles and supported by relevant facts and circumstances. Accordingly, the trial court did not err in sentencing Defendant to serve four years for his conviction of vehicular homicide by recklessness. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE