IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2017 Session

## STATE OF TENNESSEE v. GABRIEL TOBAN

**Appeal from the Circuit Court for Maury County**
**No. 23944    Robert Jones, Judge**

_____

### No.  M2016-00952-CCA-R3-CD

_____

The Defendant, Gabriel Toban, was convicted by a Maury County Circuit Court jury of third offense driving under the influence (DUI), a Class A misdemeanor.  *See* T.C.A. § 55-10-401 (2012).  The trial court sentenced the Defendant to eleven months, twenty-nine days in confinement.  On appeal, the Defendant contends that (1) the evidence is insufficient to support his DUI conviction, (2) the trial court erred by rejecting a negotiated plea agreement, (3) the indictment was invalid, and (4) the trial court erred by denying a motion to dismiss.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ. joined.

Rob McKinney and Brittney Hollis, Nashville, Tennessee, for the appellant, Gabriel Toban.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Brent A. Cooper, District Attorney General; and Adam Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from a March 1, 2014 incident in which the Defendant's car was found stopped on the interstate with the Defendant "unconscious" inside.  In 2015, the initial trial ended in a mistrial.  In 2016, the subsequent trial began, and the Defendant was convicted of third offense DUI.  At the subsequent trial, Sean Sweeny testified that he was a former law enforcement officer and that he worked as a production supervisor at the time of the incident.  He said that on March 1, he left work late after his second shift, that he traveled home on Interstate 65, and that he saw a vehicle move across the lanes of

travel. Mr. Sweeny said that the vehicle was moving slowly and that it stopped in the middle of the interstate. He knew something was wrong and said that he stopped to check on the driver, who was "slumped over" and was later identified as the Defendant. Mr. Sweeny was speaking to his fiancée on his cell phone and requested she stay on the line while he approached the Defendant's car. Mr. Sweeny said that he tapped on the passenger-side window, that the car "jerked forward," and that he asked the Defendant to roll down the window. Mr. Sweeny said the Defendant stated that he was fine and that he was driving home to Nashville from Columbia. Mr. Sweeny said that the Defendant was able to drive the car mostly out of the lane of travel and that the Defendant then gave the keys to Mr. Sweeny, who drove the car further away from the lane of travel. Mr. Sweeny said that the Defendant smelled of alcohol and that Mr. Sweeny waited for the police.

Mr. Sweeny testified that the Defendant said he did not know why he was stopped in the middle of the interstate and had been "out" with a friend. Mr. Sweeny said that he explained what had occurred to the Tennessee Highway Patrol (THP) officer who arrived and that the officer allowed Mr. Sweeny to go home.

THP Sergeant Jeff Reed testified that he arrived at the scene at 1:30 a.m. after dispatch received several reports of a vehicle parked with a "slumped over" driver in a lane of travel on Interstate 65. Sergeant Reed said that dispatch reported a passerby stopped and removed the keys from the Defendant's car, which was parked on the right side of the interstate across the white fog line. Sergeant Reed said that the Defendant was sitting in the driver's seat of the Defendant's car and that Mr. Sweeny gave the Defendant's car keys to Sergeant Reed. Sergeant Reed said that he gave Mr. Sweeny permission to leave the scene, that he moved the Defendant's car off the shoulder of the interstate, and that he waited for Officer McDonald to arrive.

Sergeant Reed testified that the Defendant and the Defendant's car smelled of alcohol and that the Defendant "had all of the signs of impairment." Sergeant Reed said the Defendant moved to the passenger seat when the sergeant moved the Defendant's car and did not leave the car until Officer McDonald arrived. Sergeant Reed said that although he may have assisted Officer McDonald with the field sobriety tests, Officer McDonald determined whether the Defendant was impaired.

On cross-examination, Sergeant Reed testified that he did not witness the Defendant driving the car and that the notifications from the dispatcher did not reflect that the Defendant had been driving. He agreed that Mr. Sweeny reported seeing the Defendant "slumped behind the driver's wheel . . . [i]n the middle of the interstate, but not driving." Sergeant Reed agreed, after reviewing his preliminary hearing testimony, that he did not recall who provided him the keys to the Defendant's car. Sergeant Reed did not think the engine of the car had been on when he arrived.

THP Officer David McDonald testified that he arrived at the scene at 1:48 a.m. and that he was informed a passerby had taken the Defendant's car keys. Officer McDonald said that when he arrived, the Defendant's car was out of the roadway and parked close to a guardrail. Officer McDonald said that the Defendant appeared confused and smelled of alcohol, that he asked the Defendant how much alcohol he drank, and that he thought the Defendant responded, "[A] little."

Officer McDonald testified that the Defendant performed poorly on the field sobriety tests. Officer McDonald said that during the walk-and-turn test, the Defendant could not maintain his balance when the officer provided instructions for the test, missed a couple of heel-to-toe steps, and used his arms for balance throughout the test. Officer McDonald said that the Defendant was unable to maintain his balance during the one-leg stand test and that during the finger-to-nose test, the Defendant missed his nose every time. Officer McDonald said that he placed the Defendant under arrest based upon the odor of alcohol and the poor performance on the field sobriety tests.

Officer McDonald testified that he requested the Defendant submit to a blood draw to determine his blood alcohol concentration, that he read the implied consent form to the Defendant, and that the Defendant refused to submit to the test. Officer McDonald said that at 2:13 a.m., he drove to a magistrate's office to obtain a search warrant for the blood draw, that he arrived at the magistrate's office around 2:36 a.m., and that he obtained a warrant for the Defendant's blood at 3:14 a.m. Officer McDonald said that he drove the Defendant to a hospital for the blood draw and that afterward, he took the vials of blood to the evidence room. The video recording from Officer McDonald's police cruiser was played for the jury.

In the recording, Officer McDonald, along with Sergeant Reed, approached the passenger-side of the Defendant's car and asked the Defendant how much alcohol he had drunk. The Defendant responded, "A little bit." Officer McDonald asked the Defendant to clarify, but the Defendant's response was not audible. Officer McDonald asked the Defendant to step out of the car, and the Defendant complied. The Defendant asked what was going on, and the officer asked the Defendant to explain what he was doing. The Defendant said he was "kind of waiting on a ride." Sergeant Reed said that "we might give you a ride here in a minute" and requested that the Defendant walk toward the officer's cruiser.

Officer McDonald asked the Defendant to perform field sobriety tests, and the Defendant complied. The officer asked the Defendant to follow the officer's finger with the Defendant's eyes, but the Defendant's performance was not visible in the recording. Officer McDonald asked if the Defendant had any injuries to his legs or back, and the Defendant responded, "Nothing too bad." The officer demonstrated the walk-and-turn test for the Defendant, and the Defendant stated the instructions before beginning the test.

The Defendant used his arms for balance and swayed. During the one-leg stand test, the Defendant lost his balance, stumbled slightly, and continued the test.

Officer McDonald instructed the Defendant how to perform the finger-to-nose test; however, the distance between the Defendant and the in-cruiser video recorder prevents a clear view of whether the Defendant properly performed the test. After completing the test, the Defendant was placed under arrest.

On cross-examination, Officer McDonald testified that neither he nor anyone else saw the Defendant driving the car, that the car's engine was not on when he arrived, and that he had never seen the keys to the Defendant's car. Officer McDonald agreed no reports were made relative to unsafe driving, only that the Defendant's car was parked on the interstate. Officer McDonald agreed that he instructed the Defendant to make heel-to-toe steps and that he did not tell the Defendant that he would fail the test if he did not "click heel-to-toe." Officer McDonald disagreed that he did not provide the proper instructions to the Defendant. Officer McDonald agreed that the field sobriety tests were not always accurate.

Officer McDonald testified that he did not look inside the Defendant's car for alcohol but that Sergeant Reed searched the car. Officer McDonald agreed that his report did not reflect that the Defendant refused a blood draw. He agreed that the Defendant said that he was waiting "on a ride" and that Sergeant Reed said the officer "might" give the Defendant "a ride." Officer McDonald said that if the Defendant had performed the field sobriety tests well, the Defendant would have "been on his own." Officer McDonald said the Defendant was not disorderly or violent and gave him no problems during the incident. Officer McDonald denied that the Defendant's car was not operational and said that the car had a push-button start and that the key fob was in Sergeant Reed's pocket.

John Harrison, an expert in forensic toxicology, testified that he analyzed the Defendant's blood before his retirement with the Tennessee Bureau of Investigation (TBI). He said that he analyzed the Defendant's blood to determine the alcohol concentration and concluded that the Defendant's blood alcohol concentration was .18%. He said that on average, a person who weighed 150 pounds would be required to consume nine, twelve-ounce cans of beer to yield a blood alcohol concentration of .18%. On cross-examination, Mr. Harrison stated that the Defendant's blood was drawn at 3:25 a.m. and that Mr. Harrison could not extrapolate the Defendant's blood alcohol level at 1:05 a.m. without information relative to "the drinking circumstances."

Upon this evidence, the jury convicted the Defendant of DUI, and the trial court determined in a bifurcated bench trial proceeding that the Defendant had committed a third offense. The trial court sentenced the Defendant to eleven months, twenty-nine days in confinement. This appeal followed.

## I. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his DUI conviction. He argues that no proof showed that he drove the car at a time when he was intoxicated. He asserts that the blood draw was taken several hours after he could have been driving or in physical control of the car. The State responds that the evidence is sufficient.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). A conviction may be based upon circumstantial evidence alone. *See Dorantes*, 331 S.W.3d at 380-381.

In relevant part,

[i]t is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways on the state, or on any streets or alleys, . . . while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous systems or combination therefore that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself which the driver would otherwise possess[.]

T.C.A. § 55-10-401 (2012). A totality of the circumstances approach is used in determining whether a defendant is in physical control of a vehicle. *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993). The jury is permitted to consider "all circumstances," including the defendant's location in relationship to the vehicle, the

location of the ignition key, whether the motor was running, the defendant's ability to direct the use or non-use of the vehicle, and whether the vehicle was capable of operation. *Id.*

In the light most favorable to the State, the evidence shows that the Defendant was both driving his car and in physical control of the car when Mr. Sweeny saw the Defendant's car on Interstate 65. Mr. Sweeny testified that he saw the Defendant's car move slowly across the lanes of travel on the interstate and stop in the middle of a lane of travel. Mr. Sweeny stopped to check on the Defendant, who was slumped over inside the car, and when Mr. Sweeny knocked on the Defendant's car window, the car jerked forward. No evidence shows anyone other than the Defendant was inside the car. Mr. Sweeny said the Defendant was able to move the car mostly out of the lane of interstate travel and gave the keys to Mr. Sweeny. Mr. Sweeny testified that the Defendant admitted he was driving home to Nashville from Columbia. Mr. Sweeny said that the Defendant reported not knowing why his car was stopped in the middle of the interstate. Mr. Sweeny, Officer McDonald, and Sergeant Reed each testified that the Defendant was confused and smelled of alcohol, and the Defendant performed poorly on various field sobriety tests. The Defendant's blood alcohol concentration was 0.18% approximately two hours after Sergeant Reed arrived at the scene. According to Sergeant Reed's testimony, the Defendant showed all the signs of impairment. The evidence is sufficient in this regard.

Relative to whether the Defendant's conduct constituted a third offense DUI, the judgment reflects that the trial court determined in a bifurcated bench trial proceeding whether the Defendant had previous DUI convictions. However, the transcript relative to this portion of the bifurcated trial is not included in the appellate record. The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal. *See, e.g.*, *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). This included the obligation to have a transcript of the evidence or proceedings prepared. *See* T.R.A.P. 24(b). "When the record is incomplete, or does not contain the proceedings relevant to an issue, this [c]ourt is precluded from considering the issue." *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). Likewise, "this [c]ourt must conclusively presume that the ruling of the trial court was correct in all particulars." *Id.* (citing *State v. Jones*, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981); *State v. Baron*, 659 S.W.2d 811, 815 (Tenn. Crim. App. 1983); *State v. Taylor*, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983)); *see State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993). The judgment reflects that the court determined that the Defendant had two previous DUI convictions and found that the Defendant had committed his third offense. As a result, the Defendant is unable to establish the evidence is insufficient to support his third conviction for DUI. We note that at a jury-out hearing during the initial trial, the parties agreed the Defendant had two previous DUI convictions. He is not entitled to relief on this basis.

## II.    Plea Agreement

The Defendant contends that the trial court erred by refusing to accept a negotiated plea agreement on the day of the trial.  He argues that the trial judge's basis for rejecting the agreement was he did not want to waste the jurors' time and tax dollars and that this basis was unreasonable.  The State responds that the court's rejection of the agreement was not unreasonable.

"[T]here is no absolute right to plead guilty." *State v. Williams*, 851 S.W.2d 828, 830 (Tenn. Crim. App. 1992).  Tennessee Criminal Procedure Rule 11 provides that a trial court has the discretion to accept or reject a negotiated plea agreement.  Tenn. R. Crim. P. 11(c)(3)-(5).  A trial court's decision to reject a plea agreement will not be overturned on appeal unless the court "abused its authority," meaning that "no substantial evidence supports the conclusion of the trial judge." *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995).  "One valid reason for rejecting a plea agreement is that the proposed sentence is . . . too lenient under the circumstances." *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995).

The record reflects that the Defendant's first trial ended in a mistrial.  After Sergeant Reed testified but before the mistrial was granted, the parties approached the trial court about a possible plea agreement and whether the court would accept it.  Trial counsel told the court that the plea agreement would require the Defendant to plead guilty to "DUI first offense with the minimums."  The trial judge responded, "No, sir.  The court will not take it . . . Not at this point in time."  The judge explained that it understood the parties attempted to reach a plea agreement the previous day and that the court was "willing to let it be settled before the jury came in.  But I'm not willing to waste all those people's time and let you settle it today."  Counsel said that if the court accepted the agreement, the Defendant would pay the jury fees and court costs.  The judge stated, however, that he had no method for determining the "costs to the employers of Maury County."  The judge stated that jury trials were expensive and important and that a jury trial should not begin only to settle the case before a jury renders its verdict.

The trial court and the attorneys addressed additional matters, but trial counsel requested the court to reconsider its decision to reject the plea agreement.  The judge asked counsel if the agreement were that the Defendant would receive the minimum sentence for a first offense DUI, and counsel confirmed this was the agreement.  The judge rejected the agreement without explanation, and counsel inquired about what an acceptable agreement might entail.  Counsel suggested a thirty-day sentence with service in the jail during fifteen consecutive weekends, but the court rejected the proposal because "[t]he sheriff doesn't want people on 15 consecutive weekends."  The judge said that "three or four ins and outs I think is about all the sheriff should have to tolerate."  The judge inquired about the Defendant's employment status, and counsel and the Defendant explained he operated a small business out of his home but traveled

-7-

extensively during the week. The judge and counsel discussed the Defendant's two previous DUI convictions. The judge stated that if the parties "thought outside the box, you might come up with something the Court would find acceptable." Although the judge noted that he was not permitted to participate in plea negotiations, the judge attempted to explain its position about an agreement. The judge stated that

> This may be about the worst case I've ever seen except for actual accidents where somebody got hurt badly. A car stopped in a lane of an interstate is about as bad as it gets. And the fact that there are these prior violations and that we've had 40 or more jurors here at considerable expense to the county and their employers, probably the employers several times more than what the county is out, all convince the Court that a settlement should not be accepted.

> . . . But there's a possibility that I would accept a settlement. I just don't know what it is. I think under the rules, both the letter and spirit, I should not suggest what would be acceptable.

> My first choice is to finish this trial, and you-all probably should devote what time you've got to getting that done, but I'm not telling you absolutely that there would not be a settlement accepted. But now that means there's not going to be a lunch hour, because if there's going to be a settlement accepted, it's going to be between 1:00 and 1:20 [p.m.]

The record reflects that the trial court did not abuse its discretion by rejecting the plea agreement. Although the court was concerned about the costs incurred by beginning the jury trial, Tennessee Criminal Procedure Rule 11 "permits the trial judge to impose reasonable pretrial time limits on the court's consideration of plea agreements, a practice which will allow the maximum efficiency in the docketing of cases[.]" Tenn. R. Crim. P. 11(c)(2)(B), Advisory Comm'n Cmts. Although the parties did not discuss whether a plea deadline was established by the court, the court expressed reservations about accepting a guilty plea after the trial had commenced. A defendant "has no entitlement to a specific plea agreement." *State v. Randell Murphy*, No. W2011-00744-CCA-R3-CD, 2012 WL 1656735, at *4 (Tenn. Crim. App. May 9, 2012), *perm. app. denied* (Tenn. Sept. 19, 2012).

In any event, the record also reflects that the trial court determined that the Defendant's pleading guilty to first offense DUI with the minimum sentence requirements was not appropriate in this case. The court noted that the Defendant had previous DUI convictions, and the court determined that a car stopped in an interstate travel lane was as "bad as it gets," with the exception of DUI crashes resulting in injury or death. Our supreme court has concluded that a "valid reason for rejecting a plea agreement is that the proposed sentence is considered too lenient under the

-8-

circumstances." *Hines*, 919 S.W.2d at 578; *see State v. Todd*, 654 S.W.2d 379, 382 (Tenn. 1983). Furthermore, the court never stated that it would not accept any settlement. To the contrary, the court told trial counsel and the prosecutor that an appropriate agreement might be accepted by the court. We note that during this initial trial, the trial court declared a mistrial and scheduled the case for a day reserved for the entry of guilty pleas and instructed the jury before discharging it that it was possible the parties might reach a settlement without having to empanel another jury. The trial court did not abuse its discretion, and the Defendant is not entitled to relief on this basis.

## III.    Validity of the Indictment

The Defendant contends that the indictment was void because it was "unconstitutionally amended." He argues that during the initial trial ending in a mistrial, he objected during a bench conference to proceeding on the indictment alleging the Defendant had committed a fourth offense DUI because the Defendant only had two previous DUI convictions that could be used for enhancement purposes. The Defendant concedes that the bench conference was held off the record and is not reflected in the transcript. He argues that the State neither obtained a superseding indictment nor filed a motion to amend the indictment. As a result, he argues that the indictment was not properly amended pursuant to Tennessee Criminal Procedure Rule 7(b). The State responds that the indictment was not amended and that the indictment's alleging a fourth offense was merely for sentencing enhancement, not an element of the offense.

Tennessee Criminal Procedure Rule 7(b)(1) permits a trial court to amend an indictment with a defendant's consent. An indictment may be amended without a defendant's consent but before jeopardy attaches "if no additional or different offense is charged and no substantial right of the defendant is prejudiced." Tenn. R. Crim. P. 7(b)(2).

The record reflects that Count 1 of the indictment alleged the Defendant had committed the offense of DUI in violation of Tennessee Code Annotated 55-10-401. Count 1 also stated that the Defendant had three previous DUI convictions and provided the dates of the offenses and convictions and the county of the convictions. During the initial trial, a jury-out hearing was held to address various issues. The parties and the trial judge discussed the Defendant's previous DUI-related convictions contained in the indictment. The parties agreed that although the Defendant had three previous DUI-related convictions, one of these convictions was for "underage driving while intoxicated" and that this conviction could not be used in determining whether the Defendant had committed a fourth offense DUI in the present case. Therefore, the parties understood that the Defendant only had two previous DUI convictions for purposes of enhancing the Defendant's sentence upon conviction for DUI in the present case. The transcript of the initial trial does not reflect any further discussions about the Defendant's

previous convictions or about the indictment's alleging the Defendant had three previous DUI convictions.

After jury selection at the subsequent trial, the trial court and the parties addressed various preliminary matters outside the jury's presence before beginning opening statements. The court noted that it would be prudent to memorialize on the record what was previously discussed in chambers earlier that morning. The trial judge stated that he had called the attorneys into his chambers and discussed, in relevant part, trial counsel's having "raised an issue about this being a felony charge deal." The judge asked counsel if counsel "want[ed] anything at this time on the record about that," and counsel responded, "No, Judge. But I would like to be heard on another issue." The court addressed counsel's unrelated issue. In any event, this court will not speculate about what occurred during the bench conference at the initial trial. We, likewise, will not speculate what occurred in the judge's chambers off the record before the subsequent trial began.

The record does not support that the indictment was amended. Rather, the record shows that the Defendant was indicted for DUI, which the evidence sufficiently supports. The portion of the indictment related to the Defendant's previous DUI convictions was merely to provide notice that the State would seek punishment based upon three previous convictions. However, during the initial trial, the parties agreed that the Defendant only had two previous DUI convictions that were applicable for purposes of sentence enhancement. No objection to the validity of the indictment was made at that time, and the record does not reflect an objection was made at any subsequent proceeding. "The issue of whether a DUI constitutes a subsequent offense does not involve a separate 'charge.' Instead, it simply affects the length of the available sentence." *State v. Nash*, 294 S.W.3d 541, 551 (Tenn. 2009); *see* T.C.A. § 55-10-402 (2012). Because the determination of whether the present conviction was the Defendant's first or subsequent DUI conviction was only related to the available sentence, not whether the Defendant committed a separate offense, the indictment did not require an amendment to reflect only two previous convictions. The charged offense was DUI, regardless of the number of previous DUI convictions. The Defendant is not entitled to relief on this issue.

### IV. Motion to Dismiss

The Defendant contends that the trial court erred by denying his motion to dismiss the indictment. He argues that the State's inability to locate a witness until one week before the trial and the State's failure to provide the defense with the "litigation package" from the TBI until a few days before the trial prejudiced his defense. He also argues that the court's refusal to accept the plea agreement at the initial trial forced him to "consent to a mistrial" and that the prosecutorial and judicial conduct prohibited a subsequent trial based upon double jeopardy principles pursuant to *Oregon v. Kennedy*, 456 U.S. 667

-10-

(1982). The State responds that the Defendant actively sought a mistrial and was not entitled to a dismissal.

The record reflects that after the mistrial was granted, the Defendant filed a motion to dismiss the indictment. The motion stated that because the State's prosecuting officer, Officer McDonald, was not the first witness in the State's case-in-chief, the mistrial had been due to the officer's presence inside the courtroom violating the sequestration rule pursuant to Tennessee Rule of Evidence 615. The motion stated that the defense objected to Officer McDonald's testifying and that the trial court ultimately declared a mistrial. The motion also stated that no manifest necessity existed to grant a mistrial because the court could have precluded the officer from testifying and that as a result, double jeopardy principles prohibited a subsequent trial pursuant to *State v. Smith*, 810 S.W.2d 155 (Tenn. Crim. App. 1991). A hearing was held on the motion, but a transcript of hearing is not included in the appellate record. The trial court entered a "case status order" on February 4, 2016, stating that the "Defendant's motion for dismissal for double jeopardy is denied for reasons stated on the record. Nunc pro tunc for Dec. 4, 2015."

Again, the Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal. *See, e.g.*, *Bunch*, 646 S.W.2d at 160. This included the obligation to have a transcript of the evidence or proceedings prepared. *See* T.R.A.P. 24(b). Because the record is incomplete, "this [c]ourt is precluded from considering the issue." *Miller*, 737 S.W.2d at 558. Likewise, "this [c]ourt must conclusively presume that the ruling of the trial court was correct in all particulars." *Id.* (citing *Jones*, 623 S.W.2d at 131; *Baron*, 659 S.W.2d at 815; *Taylor*, 669 S.W.2d at 699); *see Ivy*, 868 S.W.2d at 728. The Defendant has failed to prepare an adequate record for this issue, and he is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE